UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| I AM OTHER ENTERTAINMENT, LLC, | Case No.:  13 Civ. 4547 (LAK) |
| Plaintiff, | |
| v. | **DEFENDANTS AND COUNTERCLAIMANTS WILLIAM ADAMS AND I.AM.SYMBOLIC, LLC'S ANSWER AND COUNTERCLAIMS** |
| WILLIAM ADAMS and I.AM.SYMBOLIC, LLC, | |
| Defendants. | **JURY TRIAL DEMANDED** |
| WILLIAM ADAMS and I.AM.SYMBOLIC, LLC, | |
| Counterclaimants, | |
| v. | |
| I AM OTHER ENTERTAINMENT, LLC, and DOES 1 TO 10, | |
| Counterdefendants. | |

## ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT

Defendants and Counterclaimants William Adams and i.am.symbolic, llc (collectively, "Defendants") hereby answer the Complaint of Plaintiff I AM OTHER Entertainment, LLC ("Plaintiff") as follows:

## NATURE OF THE ACTION

1.     Defendants admit that Plaintiff has brought an action for declaratory relief seeking a declaration of non-infringement of Defendants' family of I AM trademarks. Defendants otherwise deny the remaining allegations in paragraph 1 of the Complaint.

## PARTIES

2.     Defendants deny that Plaintiff maintains its principal place of business at c/o

-1-

Pryor Cashman LLP, 7 Times Square, New York, New York 10036.  Defendants lack

information and belief as to the remaining allegations in paragraph 2 of the Complaint, and

therefore deny the same.

3.      Defendants admit that William Adams is an individual residing in the State of

California.

4.      Defendants admit that i.am.symbolic, llc is a California limited liability company

having its principal place of business in Los Angeles, California at the address indicated.

**JURISDICTION AND VENUE**

5.      Defendants admit that the Court has subject matter jurisdiction pursuant to 15

U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1367, but otherwise deny the allegations in

paragraph 5 of the Complaint.

6.      In response to the allegations in paragraph 6 of the Complaint, Defendants admit

that this Court has personal jurisdiction over them, but otherwise deny the allegations in

paragraph 6.

7.      Defendants deny that venue is proper in this District and furthermore state that

even if venue is proper, it is inconvenient.

**FACTS**

8.      Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 8 of the Complaint and on that basis deny them.

9.      Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 9 of the Complaint and on that basis deny them.

10.     Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 10 of the Complaint and on that basis deny them.

11.     Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 11 of the Complaint and on that basis deny them.

12.     Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 12 of the Complaint and on that basis deny them.

13.     On information and belief, Defendants admit that Plaintiff launched a website <iamother.com> and an I AM OTHER YouTube channel.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 13 of the Complaint and on that basis deny them.

14.     Upon review of the website <iamother.com>, Defendants admit that the website includes the text set forth in paragraph 14 of the Complaint and attributes said text to Pharrell Williams.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 14 of the Complaint and on that basis deny them.

15.     Defendants deny that the I AM OTHER mark appears in the manner depicted in paragraph 15 of the Complaint.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 15 of the Complaint and on that basis deny them.

16.     Upon review of the United States Patent and Trademark Office ("PTO") website, Defendants admit the allegations in the first sentence of paragraph 16.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 16 of the Complaint and on that basis deny them.

17.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 and on that basis deny them.

18.     Defendants admit the allegations in paragraph 18 of the Complaint.

19.     Defendants admit the allegations in paragraph 19 of the Complaint.

20.      Defendants aver that the allegations set forth in paragraph 20 of the Complaint state legal conclusions to which no response is required.  Notwithstanding the foregoing, to the extent that paragraph 20 of the Complaint contains factual allegations, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint and on that basis deny them.

21.     Defendants aver that the allegations set forth in paragraph 21 of the Complaint

state legal conclusions to which no response is required. Notwithstanding the foregoing, to the extent that paragraph 21 of the Complaint contains factual allegations, Defendants deny them.

22.     Defendants admit the allegations in paragraph 22 of the Complaint.

23.     Defendants admit that the PTO has issued office actions for certain of their applications for marks including the I AM, but otherwise deny the remaining allegations in paragraph 23 of the Complaint. Defendants specifically deny that the PTO has issued final refusals to register the applications identified, as suggested erroneously by Plaintiff. Defendants further allege that many of the applications cited against Defendant i.am.symbollic, llc's trademark applications by the PTO are owned by William Adams.

24.     Defendants deny the allegations in paragraph 24 of the Complaint.

25.     Defendants admit that they have additional pending applications for I AM formative marks, but otherwise deny the remaining allegations in paragraph 25 of the Complaint.

26.     Defendants deny the allegations in paragraph 26 of the Complaint.

27.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint and on that basis deny them.

28.     Defendants deny the allegations in paragraph 28 of the Complaint.

29.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint and on that basis deny them.

30.     Defendants deny the allegations in the first and third sentences of paragraph 30 of the Complaint. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 30 of the Complaint and on that basis deny them.

31.      Defendants admit that their counsel sent a letter to Plaintiff dated December 4, 2012 (the "December 4, 2012 letter"), stating that "I AM OTHER's and [United Entertainment Group's] use of the term I AM is likely to cause visitors to the Website to believe that Mr.

-4-

Adams is affiliated with the Website or has approved, licensed, or authorized the use of his intellectual property for these services, when in fact he has not done so." Defendants further admit that Exhibit 3 is a true and correct copy of the December 4, 2012 letter. Defendants deny the remaining allegations in paragraph 31 of the Complaint. Defendants deny the remaining allegations in paragraph 31 of the Complaint.

32.    Defendants admit that their counsel sent the December 4, 2012 letter. As for the content of such letter, it speaks for itself.

33.    Defendants admit that the December 4, 2012 letter stated that "in order to resolve this matter without litigation, we request that you agree in writing to immediately: (1) expressly abandon your trademark applications Serial Nos. 85/640,747, 85/640,753, 85/640,758, 85/640,768, 85/640,776, 85/640,784, 85/640,795, and 85/640,797 for the mark I AM OTHER; (2) not to use the mark I AM or any mark, name, logo or the like that is confusingly similar to I AM, for any products or services; (3) transfer ownership of the [<iamother.com>] Website's domain name to Mr. Adams; and (4) to the extent that you have sold products or services under I AM, provide us with an accounting of those sales or revenues." As for the content of such letter, it speaks for itself. Defendants otherwise deny the remaining allegations in paragraph 33 of the Complaint.

34.    Defendants admit that Plaintiff wrote a letter dated December 12, 2012, and further admit that Exhibit 4 is a true and correct copy of the December 12, 2012 letter. No response is required to the portions of paragraph 34 of the Complaint that purport to characterize the contents of the December 12, 2012 letter, as the document speaks for itself. Defendants are without knowledge or information sufficient to form a belief as to the allegations regarding the meaning of the I AM OTHER mark alleged in paragraph 34 of the Complaint and on that basis deny them. Defendants deny the remaining allegations in paragraph 34 of the Complaint.

35.    No response is required to the portions of paragraph 35 that purport to characterize the contents of, or quote from, the December 12, 2012 letter or the document attached as Exhibit 5 to the Complaint, as the documents speak for themselves. Defendants are

without knowledge or information sufficient to form a belief as to the allegations regarding the authenticity of Exhibit 5 set forth in paragraph 35 of the Complaint and on that basis deny them. Defendants deny the remaining allegations in paragraph 35 of the Complaint, including Plaintiff's misleading characterization of Defendants' application to register I AM in Class 3, and the prosecution and status of such application.

36.     Defendants admit that they wrote a letter dated December 28, 2012, and further admit that Exhibit 6 is a true and correct copy of the December 28, 2012 letter.  No response is required to the portions of paragraph 36 of the Complaint that purport to characterize the contents of, or quote from, the December 28, 2012 letter, as the document speaks for itself.

37.     Defendants admit that Plaintiff wrote a letter dated January 15, 2013, and further admit that Exhibit 7 is a true and correct copy of the January 15, 2013 letter.  No response is required to the portions of paragraph 37 of the Complaint that purport to characterize the contents of, or quote from, the January 15, 2013 letter or the document attached as Exhibit 5 to the Complaint, as the documents speak for themselves.  Defendants further deny that the I AM logo identified in paragraph 37 owned by Defendants is the only I AM logo used by Defendants.

38.     Defendants admit that they opposed Plaintiff's pending applications for the I AM OTHER mark in March 2013 and May 2013.

39.     Defendants admit that there is a dispute between the parties regarding Plaintiff's right to use and register the I AM OTHER mark, but deny that Plaintiff is entitled to a declaratory judgment from this Court.  Defendants deny the remaining allegations in paragraph 39 of the Complaint.

40.     Defendants deny that Plaintiff is entitled to a declaratory judgment from this Court.  Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 40 of the Complaint and on that basis deny them.

41.     Defendants deny that Plaintiff is entitled to a declaratory judgment from this Court.  Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 41 of the Complaint and on that basis deny them.

42.     Defendants deny that Plaintiff is entitled to a declaratory judgment from this Court.  Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 42 of the Complaint and on that basis deny them.

43.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in the first sentence in paragraph 43 of the Complaint and on that basis deny them.  Defendants deny the remaining allegations in paragraph 43 of the Complaint.

## FIRST CLAIM FOR RELIEF

## DECLARATION OF NON-INFRINGEMENT UNDER 15 U.S.C. § 1114

44.     Defendants incorporate by reference their responses to paragraphs 1 through 43 of the Complaint.

45.     Defendants deny the allegations in paragraph 45 of the Complaint.

## SECOND CLAIM FOR RELIEF

## DECLARATION THAT PLAINTIFF IS NOT UNFAIRLY COMPETING

## UNDER 15 U.S.C. § 1124(a)

46.     Defendants incorporate by reference their responses to paragraphs 1 through 43 of the Complaint.

47.     Defendants deny the allegations in paragraph 47 of the Complaint.

48.     Defendants deny the allegations in paragraph 48 of the Complaint.

## THIRD CLAIM FOR RELIEF

## DECLARATION OF NON-DILUTION UNDER 15 U.S.C. § 1125(c)

49.     Defendants incorporate by reference their responses to paragraphs 1 through 43 of the Complaint.

50.     Defendants deny the allegations in paragraph 50 of the Complaint.

51.     Defendants deny the allegations in paragraph 51 of the Complaint.

52.     Defendants deny the allegations in paragraph 52 of the Complaint.

## FOURTH CLAIM FOR RELIEF

## DECLARATION OF NON-INFRINGEMENT UNDER COMMON LAW

53.    Defendants incorporate by reference their responses to paragraphs 1 through 43 of the Complaint.

54.    Defendants deny the allegations in paragraph 54 of the Complaint.

## PLAINTIFF'S PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to:  (i) any judgment, order, or decree against Defendants, and (ii) any relief, equitable or otherwise, requested in Plaintiff's prayer for relief.

## DEMAND FOR JURY TRIAL

Defendants request a trial by jury on all issues so triable in this action.

## DEFENDANTS' AFFIRMATIVE DEFENSES

## FIRST DEFENSE

## (Failure to State a Claim)

Plaintiff fails to state a claim for which relief can be granted.

## SECOND DEFENSE

## (Laches)

Plaintiff's claims are barred by the doctrine of laches.

## THIRD DEFENSE

## (Acquiescence)

Plaintiff's claims are barred by the doctrine of acquiescence.

## FOURTH DEFENSE

## (Waiver)

Plaintiff's claims are barred, in whole or part, by the doctrine of waiver.

## FIFTH DEFENSE

## (Estoppel)

Plaintiff's claims are barred, in whole or part, by the doctrine of estoppel.

## SIXTH DEFENSE

### (Privilege)

Plaintiff's claims are barred, in whole or part, because Defendants' conduct is privileged.

## SEVENTH DEFENSE

### (Unclean Hands)

Plaintiff's claims are barred, in whole or part, by the doctrine of unclean hands.

## EIGHTH DEFENSE

### (Abuse of Process)

Plaintiff's claims are barred, in whole or part, because of its abuse of process, including, but not limited to, its filing of a declaratory judgment action and leaking it to the press in an attempt to try this case in the media and to preempt the filing by Defendants of an infringement action (if necessary) in California.

## NINTH DEFENSE

### (Reservation of Rights and Remedies)

Defendants reserve the right to raise additional defenses as it becomes aware of them.

## DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, Defendants pray for judgment as follows:

a.     Plaintiff take nothing by way of the Complaint and the Court dismiss the Complaint with prejudice;

b.     The Court enter judgment that Defendants are the prevailing parties in this action;

c.     The Court award Defendants all costs, expenses and attorneys' fees;

d.     The Court award any and all other relief to which Defendants may be entitled.

## DEFENDANTS' COUNTERCLAIMS

Defendants, for their counterclaims against Plaintiff, allege as follows:

## JURISDICTION

1.       This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1051, *et seq.*, under the common law of trademark infringement and under the statutory and common law of unfair competition. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b), and § 1367, and 15 U.S.C. § 1121. This action arises under the laws of the United States.

## PARTIES

2.       Defendant William Adams is an individual residing in the State of California.

3.       Defendant i.am.symbolic, llc is a California limited liability company having its principal place of business in Los Angeles, California.

4.       Plaintiff I AM OTHER Entertainment, LLC is a Delaware limited liability company, which maintains offices in Los Angeles, California at 10960 Wilshire Blvd., 5th Floor, Los Angeles, CA 90024. On information and belief, Plaintiff's aforementioned Los Angeles office is its principal place of business, and Plaintiff is doing business in the State of California. Plaintiff alleges it is also doing business in this District.

5.       Plaintiff alleges in paragraph 1 of the Complaint that it "maintains its principal place of business at c/o Pryor Cashman LLP, 7 Times Square, New York, New York 10036," which is *Plaintiff's counsel's* address. This allegation is designed to suggest a connection to the chosen venue, when, in fact, a party's counsel's location is not relevant to the calculus.

6.       Pharrell Williams is an acting officer and manager of Plaintiff, and on information and belief, resides in the State of California, and owns residences in the State of Florida and the Commonwealth of Virginia.

7.       Does 1 through 10 are yet unknown entities that are or have been involved in the manufacture, production and/or promotion of the I AM OTHER goods and services intended to be manufactured, distributed and/or offered by Plaintiff or its affiliates and subsidiaries.

8.       Plaintiff claims to be subject to personal jurisdiction in this District.

## FACTS

**Defendants' Business and Trademarks**

9. Defendant William Adams, known as will.i.am ("will.i.am"), is a globally-recognized hip hop musician, performer, entertainer, songwriter, multi-platinum producer, philanthropist and entrepreneur.  will.i.am is the frontman of the Grammy-award winning musical group The Black Eyed Peas.  The Black Eyed Peas released their first album on Interscope Records in 1998 and have since released five other full-length albums.  The Black Eyed Peas have sold millions of albums worldwide, and the albums Elephunk, Monkey Business and The E.N.D. have each sold more than 2 million copies in the United States alone.  Outside of The Black Eyed Peas, will.i.am has produced songs for and/or performed as a featured artist with artists such as Michael Jackson, U2, Britney Spears, Usher, Rihanna, David Guetta, Mary J. Blige and many others.  Among his many notable achievements, will.i.am produced the video "Yes We Can," which won an Emmy Award in 2008 and became a viral internet hit that mobilized millions of people to vote during the 2008 Presidential election.

10. Defendants are the owners of many trademarks, including the I AM trademark for use with a variety of goods and services.  More specifically, Defendants own the federally registered I AM trademark for use with clothing and footwear, which registration is now incontestable.  Defendants also use and own the federally registered and common law mark WILL.I.AM for various goods and services, including entertainment, philanthropic and entrepreneurial services, entertainment-related goods, clothing, consumer electronic products and other consumer products, and musical sound recordings.  Defendants expressly license or have licensed the use of their intellectual property, including the use of the I AM mark, for clothing, live music concerts and entertainment.[1]

11. will.i.am first used the trademark I AM on clothing in 2000, and wore clothing

---

[1]  will.i.am is in privity with Defendant i.am.symbolic, llc because will.i.am formed i.am.symbolic, llc and is a manager of i.am.symbolic, llc.  Further, i.am.symbolic, llc and will.i.am assigned his various I AM and WILL.I.AM trademarks to i.am.symbolic, llc.

bearing I AM in public from that time.  will.i.am owns the domain name <<iamclothing.net>>, which hosts a website dedicated to his i.am clothing label.  will.i.am registered this domain name on or about August 29, 2002.

12.    In early 2009, will.i.am decided to launch a men's collection under the i.am clothing label in collaboration with a clothing manufacturer.  will.i.am first used the mark I AM for clothing in Canada in June 2009, and officially launched the line at the MAGIC tradeshow in Las Vegas in September 2009.

13.    As referenced above, will.i.am is the owner of the incontestable registered trademark I AM, U.S. Registration No. 2,433,688, for clothing and footwear in Class 25, and owns common law rights associated with clothing, headwear, footwear and other goods offered under the I AM mark.  Attached hereto as **Exhibit A** is a true and correct copy of the registration for will.i.am's I AM mark in Class 25.

14.    The I AM mark in Class 25 was registered by Groundlevel Footwear, Inc., an Arizona corporation (hereinafter, "Groundlevel").  Groundlevel filed its application leading to the registration of the I AM mark (U.S. Registration No. 2,433,688) on May 3, 2000, claiming a date of first use in commerce of January 15, 2000 and a date of first use anywhere of March 1, 1999.  Groundlevel's date of first use in commerce and date of first use anywhere precede the filing date of all of Plaintiff's applications to register the I AM OTHER mark.  will.i.am succeeded to all right and title to the I AM mark in Class 25 from Groundlevel.

15.    i.am.symbolic owns a family of I AM marks, and promotes the family of marks together.  i.am.symbolic owns the following I AM formative and WILL.I.AM trademark applications and/or registrations:

| Mark | Classes | App./Reg. No. | Filing/ Reg. Date |
|---|---|---|---|
| I AM | 25 | 76/039,669 2,433,688 | 5/3/00 3/6/01 |
| WILL.I.AM | 9 | 77/665,543 3,678,106 | 2/9/09 9/1/09 |

| Mark | Classes | App./Reg. No. | Filing/ Reg. Date |
|------|---------|---------------|-------------------|
| WILL.I.AM | 41 | 77/666,402 3,707,981 | 2/9/09 11/10/09 |
| WILL.I.AM | 9 | 85/916,807 | 4/28/13 |
| WILL.I.AM | 41 | 85/916,808 | 4/28/13 |
| WILL.I.AM | 42 | 85/916,809 | 4/28/13 |
| WILL.I.AM | 3, 14, 18 & 25 | 77/685,865 | 3/6/09 |
| I AM | 3 | 85/044,494 | 5/21/10 |
| I AM | 9 | 85/044,495 | 5/21/10 |
| I AM | 14 | 85/044,496 | 5/21/10 |
| I AM | 18 | 85/044,497 | 5/21/10 |
| I AM | 25 | 85/044,498 | 5/21/10 |
| I AM | 41 | 85/044,499 | 5/21/10 |
| I AM ANGEL | 41 | 85/538,986 | 2/10/12 |
| I AM STEAM | 41 | 85/733,334 | 9/19/12 |
| I AM PLUS | 9 | 85/788,915 | 11/28/12 |
| I AM PLUS | 14 | 85/788,916 | 11/28/12 |
| I AM PLUS | 18 | 85/788,917 | 11/28/12 |
| I AM PLUS | 25 | 85/788,918 | 11/28/12 |
| I AM PLUS | 41 | 85/788,919 | 11/28/12 |
| I AM+ | 9 | 85/788,922 | 11/28/12 |
| I AM+ | 14 | 85/788,923 | 11/28/12 |
| I AM+ | 18 | 85/788,924 | 11/28/12 |
| I AM+ | 25 | 85/788,925 | 11/28/12 |
| I AM+ | 41 | 85/788,926 | 11/28/12 |
| iam+ | 9 | 85/788,930 | 11/28/12 |
| iam+ | 14 | 85/788,931 | 11/28/12 |
| iam+ | 18 | 85/788,932 | 11/28/12 |
| iam+ | 25 | 85/788,933 | 11/28/12 |

| Mark | Classes | App./Reg. No. | Filing/ Reg. Date |
|---|---|---|---|
| **ı̇am⁺** | 41 | 85/788,934 | 11/28/12 |

16.     Defendants use and/or are seeking registration of other I AM formative marks, including but not limited to, I AM AUTO, I AM SCHOLARSHIP, I AM HOME, I AM COLLEGE TRACK, I AM FIRST and I AM BOYLE HEIGHTS CENTER.  Printouts from Defendants' i.am.angel Foundation website at <www.iamangelfoundation.org> reflecting the use of some of these marks is attached as **Exhibit B**.  A printout from a celebrity news site regarding Defendants' launch of I AM AUTO at <www.popcrush.com> is attached as **Exhibit C**.  The marks identified in paragraphs 15 and 16 in this Counterclaim are collectively referred to as the "will.i.am Family of Marks."

17.     Examples of the font stylization and logos that Defendants use with their various will.i.am Family of Marks are shown below:





















 



 

18.     Defendants have invested considerable time and money in building the will.i.am Family of Marks.  Due to the significant sales of will.i.am's recordings and merchandise, and the publicity that he receives, the I AM mark, which constitutes a distinct portion of will.i.am's popular name and moniker, and the WILL.I.AM mark, have acquired substantial fame and goodwill and are associated with Defendants and their goods and services.

**Plaintiff and Its Infringing Actions**

19.     Like will.i.am, Pharrell Williams is a musician in the entertainment industry, generally, and the hip hop world, in particular.  According to Plaintiff, Mr. Williams has achieved great distinction producing for and collaborating with "dozens of the music industry's most iconic personalities," including Justin Timberlake, Jay-Z, Robin Thicke, Nelly, Usher, Kelis, Kanye West, Snoop Dogg, Ludacris and Busta Rhymes.

20.     Mr. Williams has also collaborated with will.i.am.  The two artists have appeared publicly together, as reflected in the photograph and YouTube.com webpages attached hereto as

-15-

**Exhibit D** featuring Will Adams and Pharrell Williams, and have even performed the same type of music together on various occasions.

21.     Like will.i.am, Pharrell Williams also attributes some of his success to his involvement in the fashion world, having founded two clothing lines (BILLIONAIRE BOYS CLUB and ICE CREAM) and collaborated on various other apparel design projects.

22.     Mr. Williams and will.i.am are signed to the very same record label, Interscope Records, which maintains its principal place of business in Santa Monica, California.  Both Mr. Williams and will.i.am also have the same business manager—the Los Angeles-based firm of Nigro Kalin Segal and Feldstein, with its principal place of business at 10960 Wilshire Blvd., 5th Floor, Los Angeles, California.  On information and belief, Plaintiff's place of business is in Los Angeles at the address of Mr. Williams' business manager.

23.     Despite the overlap in the careers of these two artists, and without Defendants' knowledge or consent, Plaintiff launched a social media venture under the name and trademark I AM OTHER, described in online publicity as "a content-driven property that spotlights new musicians, filmmakers, designers, artists and innovators through online, mobile and retail channels, TV shows and films," and promoted through the website located at <www.iamother.com>.  Copies of the <iamother.com> website reflecting the unlicensed use of the I AM mark for promoting musical artists and online programming (the "Infringing Services") are attached hereto as **Exhibit E**.

24.     The likelihood of confusion, false association, and unfair competition stemming from Plaintiff's unauthorized use of the trademark I AM are great because of the prior collaboration between will.i.am and Mr. Williams; they are both musicians; they are signed to the same label; they perform, record, and compose the same genre of music; they have performed the same type of music together; they are both fashion designers; they sell or intend to use, or in the case of Plaintiff, claim to intend to use, their respective I AM marks on the same or related goods and services; the respective marks are confusingly similar in appearance, sound and meaning; and the will.i.am Family of Marks are famous or at least well known.

25.      Plaintiff's unauthorized use of the I AM mark creates a likelihood that will.i.am's fans, as well as prospective and actual purchasers of Plaintiff's and Defendants' goods and services, will erroneously believe that Defendants have approved or licensed Plaintiff's use of I AM, or are somehow affiliated or connected with Mr. Williams or his business, when in fact Defendants have not sponsored, licensed or approved Plaintiff's activities in any respect. Further, Plaintiff's unauthorized use of I AM will erode the association of the I AM mark and WILL.I.AM mark with Defendants and Defendants' goods or services.

26.      Plaintiff's use of the term I AM is also likely to cause visitors to the <iamother.com> website to believe that Defendants are affiliated with the website or have approved, licensed or authorized the use of their intellectual property for these services, when in fact, they have not done so.  Defendants have entered into licensing and endorsement agreements with other entities for such services under the I AM mark, and Plaintiff's use of the I AM mark was, and continues to be, without prior authorization, permission or license from Defendants.

27.      Plaintiff's unauthorized use of the I AM mark is of particular concern because Plaintiff is offering music and entertainment-related content—the very same type of content that will.i.am has been identifying with its federally registered I AM mark and WILL.I.AM mark and with some of the will.i.am Family of Marks for years before Plaintiff even began promoting and offering the services under, or otherwise using, the I AM OTHER mark.

28.      The likelihood of consumer confusion due to Plaintiff's use of the I AM OTHER trademark is further exacerbated by Plaintiff's use of font stylizations and logos on the <iamother.com> website and elsewhere that are evocative of the font stylizations and logos used by Defendants.  For example:

    

29.      Plaintiff could have selected any other words to use besides "i am" to promote its

goods and services.  Instead, on information and belief, Plaintiff intentionally or with reckless disregard selected a trademark it knew included Defendants' trademark and at the very least, was confusingly similar to Defendants' I AM and WILL.I.AM trademarks and some of the will.i.am Family of Marks, which Defendants were already using and had invested considerable time, money and energy in building.

30.     In fact, Plaintiff's own lawyer in this case represented another party in connection with an opposition proceeding pending before the Trademark Trial & Appeal Board ("TTAB") of the PTO.  will.i.am is (and has been) challenging that party's attempt to register the mark I AM MUSIC.  As reflected in the documents attached hereto as **Exhibits F** and **G**, Plaintiff's lawyer was brought in as counsel in the I AM MUSIC case on or about September 27, 2010, and filed an answer in that case on or about December 3, 2010, and defended the I AM MUSIC case until on or about February 13, 2012.  Thus, Plaintiff's lawyer unquestionably had knowledge of Defendants' prior rights in the I AM formative marks and their position, and presumably informed Plaintiff of the same when it selected the mark I AM OTHER and opted to begin its unauthorized use of the I AM mark.  Yet Plaintiff proceeded anyway, despite the knowledge of Defendants' rights directly and through its counsel's prior representation of another party whose I AM MUSIC mark was challenged by Defendants.

31.     It is unknown why Plaintiff intentionally selected a mark so close to Defendants' well-known moniker WILL.I.AM and the family of I AM marks, particularly given Mr. Williams and will.i.am's prior musical endeavors.  However, this is not the first time that Mr. Williams and Plaintiff have coopted a trademark, logo or business name that bears striking resemblance to that of another.  For example, on information and belief, Mr. Williams claims to have co-founded a record label called STAR TRAK ENTERTAINMENT, which operates as a subsidiary of Universal Music Group whose releases are distributed by Interscope Records (will.i.am's and Mr. Williams' record label).  On or about March 6, 2011, Star Trak Entertainment filed a fictitious business name filing in Florida for I AM OTHER, signed by Mr. Williams.  The name STAR TRAK ENTERTAINMENT used by Mr. Williams is extremely

close to the well known trademark STAR TREK owned by Paramount Pictures Corporation and/or CBS Studios.  Another example is Mr. Williams' use and attempted registration of the mark PINK SLIME, for use with various goods and services, which bears noticeable similarity to the mark SLIME, used for decades and owned by Mattel, Inc.  Further, Plaintiff's principal, Pharrell Williams, recently sued the heirs of Marvin Gaye and Bridgeport Music, Inc. ("BMI") (again in a declaratory judgment action) to determine the Marvin Gaye heirs' and BMI's claim of copyright infringement based on a song composed and/or performed by Pharrell Williams.  Put another way, Pharrell Williams was accused of copyright infringement by Marvin Gaye's heirs and BMI, and Mr. Williams pre-emptively filed a declaratory judgment lawsuit to determine the alleged infringement of one of Marvin Gaye's songs.  That case was filed in the U.S. District Court for the Central District of California.

32.     Plaintiff filed eight "intent-to-use" trademark applications for the mark I AM OTHER with the PTO bearing Serial Nos. 85/640,747, 85/640,753, 85/640,758, 85/640,768, 85/640,776, 85/640,784, 85/640,795, and 85/640,797, covering a broad range of goods in Classes 3, 9, 14, 16, 18, 25, and a broad range of services in Classes 35 and 41.  Copies of PTO web pages for the I AM OTHER trademark applications are attached hereto as **Exhibit H**.  Plaintiff filed these applications after the I AM mark and the WILL.I.AM mark became famous, and with direct knowledge or knowledge from its counsel of Defendants' prior rights in some or all of the will.i.am Family of Marks or at least the I AM mark and the WILL.I.AM mark.

33.     On information and belief, Plaintiff intends to market I AM OTHER-branded goods and services to the same consumers to which Defendants market their goods and services.

34.     On information and belief, Plaintiff lacks a bona fide intent to use the mark I AM OTHER on all of the goods and services identified in the aforementioned applications. Indeed, while Plaintiff has filed expansive applications for a wide variety of goods and services including, but not limited to, Class 3 cosmetics and perfumes, Class 9 musical sound recordings, DVDs, downloadable videos, software and sunglasses, Class 14 jewelry, Class 16 printed

materials, Class 18 leather goods and bags, Class 25 clothing, Class 35 online retail store services, management of musical artists and the promotion of concerts, and Class 41 entertainment services, record and music production and distribution, to date, Plaintiff has only offered clothing and some apparel items in connection with his other business ventures (BILLIONAIRE BOYS CLUB and ICE CREAM), and has used I AM OTHER for its YouTube channel and its website, and t-shirts bearing I AM OTHER offered on Plaintiff's website.  By filing such expansive trademark applications for I AM OTHER, Plaintiff seeks to exclude others from using and registering other I AM formative trademarks and OTHER formative trademarks for all of the goods and services identified in Plaintiff's I AM OTHER applications and for all goods and services related thereto.

35.     Despite knowledge of Defendants' claimed rights in their will.i.am Family of Marks and Defendants' oppositions to Plaintiff's I AM OTHER trademark applications, Plaintiff has recently expanded its use of the mark I AM by selling, distributing, and/or offering gift sets including various items and offered under the mark I AM OTHER and apparently sequentially numbered with #IA001, etc.

36.     Plaintiff and Mr. Williams know the value of trademarks and protecting them as shown by their applications to register and/or registrations of the following additional trademarks:

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------|
| PHARRELL | 41 | Record production; music production; audio recording and production; videotape production; motion picture song production; production of video discs for others; recording studios; entertainment services, namely, production and distribution of musical audio and video programs; production and distribution of musical audio and video recordings for broadcast; music composition and transcription for others; song writing services; music publishing services; entertainment in the nature of a live musical performer, musical band or musical group; entertainment in the nature of live performances by a musical artist, musical group or musical band; | 85/148,243 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|------------|
| | | entertainment in the nature of visual and audio performances by a musical artist, musical group and musical band; entertainment, namely, live music concerts; entertainment, namely, personal appearances by a musician, musical group or musical band; entertainment, namely, personal appearances by a television star, movie star, comedian or radio personality; entertainment services, namely, providing a web site featuring non-downloadable musical performances, musical videos, related film clips, photographs, and other multimedia materials featuring music and entertainment; entertainment services, namely, providing non-downloadable prerecorded music, information in the field of music, commentary and articles about music, all online via a global computer network; production of television and radio programs; television show production; cable television show production; radio entertainment production; motion picture film production; film editing; special effects animation services for film and video; entertainment in the nature of on-going television, cable television and radio programs featuring music, comedy, dramatic acts, spoken word, cartoons, animation and educational subject matters. providing a variety show distributed over television, cable television, radio, satellite, audio and video media; entertainment, namely, a continuing variety, news, comedy, dramatic and musical show broadcast over television, satellite, audio and video media; theatre productions; entertainment in the nature of traveling tours featuring live music, live drama, live spoken word and live comedy performances; educational and entertainment services, namely, providing motivational and educational speakers; distribution of television programs and radio programs for others; television program syndication; programming on a global computer network; distribution of television programming to cable television systems; cable television programming; television and radio programming; television scheduling; entertainment services, namely, providing an on-line computer game; providing a computer game that may be accessed network-wide by network users; multimedia entertainment software production services; | |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------|
| | | providing information online relating to computer games and computer enhancements for games | |
| PHARRELL | 3 | Cosmetics; facial makeup, concealers, blushers, facial powders, foundation makeup, eye makeup, eye pencils, eyebrow pencils, mascara, false eyelashes, face and body glitter, cosmetic compacts, cosmetic pencils, lipstick, lipstick cases, lipstick holders, lip gloss, lip pomades, lip pencils, makeup removers, makeup applicators in the nature of cotton swabs for cosmetic purposes, eye creams, facial cleansers, toners, facial exfoliants and scrubs, facial creams, facial moisturizers, facial lotions and non-medicated facial treatment preparations in the nature of facial emulsions, skin cleaning cream, skin peeling gel, skin firming cream, skin firming facial mask, skin firming face powder, skin renewal serum and skin lifting serum, wrinkle removing skin care preparations, nail polishes, nail polish base coat, nail polish top coat, nail strengtheners, nail hardeners, nail polish removers, nail creams, cuticle removing preparations, nail tips, and nail buffing preparations; beauty milks, skin moisturizers and skin moisturizer masks, skin conditioners, hand creams, massage oils, essential oils for personal use, talcum powder, perfumed powders, bath beads, bath crystals, bath foam, bath gels, bath oils, bath powders, bath salts, face wash, skin cleansers, skin highlighter, body scrubs, body fragrances, fragrances for personal use, body and hand lotions, body gels, shower gels, body oils, body powders, body exfoliants, body masks, body mask creams and lotions, shaving preparations, after shave lotions, shaving balm, shaving cream, shaving gel, skin abrasive preparations, non-medicated skin creams and skin lotions for relieving razor burns, non-medicated lip care preparations, lip cream, sunscreen preparations, suntanning preparations and after-sun lotions; cosmetic sun-protecting preparations. sun tan oils; self-tanning preparations, namely, self tanning milk and cream, accelerated tanning cream, self-tanning lotions, gels and sprays; perfume, perfume oils, cologne, eau de toilette, eau de perfume, eau de cologne and toilette water; toothpaste, deodorant and antiperspirant; cosmetic pads, pre-moistened cosmetic wipes, pre-moistened cosmetic tissues and towelettes; cotton sticks for | 85/148,154 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|------------|
| | | cosmetic purposes; all purpose cotton swabs for personal use and cosmetic purposes; non-medicated topical skin creams, ointments, gels, toners, lotions, sprays and powders for cosmetic use and for the prevention and treatment of wrinkles and sunburn; non-medicated skin creams and lotions with essential oils for use in aromatherapy; essential oils for use in aromatherapy; hair care products, namely, shampoos, conditioners, mousse, gels, frosts, creams, rinses, sprays, hair color, hair waving lotion, permanent wave preparations, hair lighteners, hair dyes, hair emollients, hair mascara, hair pomades, hair color removers, hair relaxing preparations, hair styling preparations, hair removing cream, and hair care preparations; astringents for cosmetic purposes; baby wipes; disposable wipes impregnated with cleansing chemicals or compounds for personal hygiene and household use; incense; room fragrances; fragrance emitting wicks for room fragrances; sachets; sachet-like eye pillows containing fragrances; scented ceramic stones; scented linen sprays and scented room sprays; scented oils used to produce aromas when heated; scented pine cones; potpourri; aromatic pillows comprising potpourri in fabric containers | |
| PHARRELL WILLIAMS | 25 | Clothing, namely, shirts, T-shirts, under shirts, night shirts, rugby shirts, polo shirts, cardigans, jerseys, uniforms, athletic uniforms, pants, trousers, slacks, jeans, denim jeans, culottes, cargo pants, overalls, coveralls, jumpers, jump suits, shorts, boxer shorts, tops, crop tops, tank tops, halter tops, sweat shirts, sweat shorts, sweat pants, wraps, warm-up suits, jogging suits, track suits, blouses, skirts, dresses, gowns, sweaters, vests, fleece vests, pullovers, snow suits, parkas, capes, anoraks, ponchos, jackets, reversible jackets, coats, blazers, suits, turtlenecks, cloth ski bibs, swimwear, beachwear, tennis wear, surf wear, ski wear, infantwear, baby bibs not of paper, cloth diapers, caps, swim caps, berets, beanies, hats, visors, headbands, wrist bands, sweat bands, headwear, ear muffs, aprons, scarves, bandanas, belts, suspenders, neckwear, neckties, ties, neckerchiefs, ascots, underwear, briefs, swim and bathing trunks, bras, sports bras, brassieres, bustiers, corsets, panties, garters and garter belts, teddies, girdles, foundation garments, singlets, socks, | 85/148,233 |

| Mark | Class | Goods and Services | Serial No. |
|---|---|---|---|
| | | loungewear, robes, bathrobes, underclothes, pajamas, sleepwear, night gowns, lingerie, camisoles, negligees, chemises, chemisettes, slips, sarongs, leg warmers, hosiery, pantyhose, body stockings, knee highs, leggings, tights, leotards, body suits, unitards, body shapers, gloves, mittens, footwear, shoes, sneakers, boots, galoshes, sandals, flip-flops, zori, slippers and rainwear | |
| PHARRELL | 25 | Clothing, namely, shirts, T-shirts, under shirts, night shirts, rugby shirts, polo shirts, cardigans, jerseys, uniforms, athletic uniforms, pants, trousers, slacks, jeans, denim jeans, culottes, cargo pants, overalls, coveralls, jumpers, jump suits, shorts, boxer shorts, tops, crop tops, tank tops, halter tops, sweat shirts, sweat shorts, sweat pants, wraps, warm-up suits, jogging suits, track suits, blouses, skirts, dresses, gowns, sweaters, vests, fleece vests, pullovers, snow suits, parkas, capes, anoraks, ponchos, jackets, reversible jackets, coats, blazers, suits, turtlenecks, cloth ski bibs, swimwear, beachwear, tennis wear, surf wear, ski wear, infantwear, baby bibs not of paper, cloth diapers, caps, swim caps, berets, beanies, hats, visors, headbands, wrist bands, sweat bands, headwear, ear muffs, aprons, scarves, bandanas, belts, suspenders, neckwear, neckties, ties, neckerchiefs, ascots, underwear, briefs, swim and bathing trunks, bras, sports bras, brassieres, bustiers, corsets, panties, garters and garter belts, teddies, girdles, foundation garments, singlets, socks, loungewear, robes, bathrobes, underclothes, pajamas, sleepwear, night gowns, lingerie, camisoles, negligees, chemises, chemisettes, slips, sarongs, leg warmers, hosiery, pantyhose, body stockings, knee highs, leggings, tights, leotards, body suits, unitards, body shapers, gloves, mittens, footwear, shoes, sneakers, boots, galoshes, sandals, flip-flops, zori, slippers and rainwear | 85/148,231 |
| PHARRELL WILLIAMS | 41 | Record production; music production; audio recording and production; videotape production; motion picture song production; production of video discs for others; recording studios; entertainment services, namely, production and distribution of musical audio and video programs; production and distribution of musical audio and video recordings for broadcast; music composition and transcription for | 85/148,237 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|------------|
|  |  | others; song writing services; music publishing services; entertainment in the nature of a live musical performer, musical band or musical group; entertainment in the nature of live performances by a musical artist, musical group or musical band; entertainment in the nature of visual and audio performances by a musical artist, musical group and musical band; entertainment, namely, live music concerts; entertainment, namely, personal appearances by a musician, musical group or musical band; entertainment, namely, personal appearances by a television star, movie star, comedian or radio personality; entertainment services, namely, providing a web site featuring non-downloadable musical performances, musical videos, related film clips, photographs, and other multimedia materials featuring music and entertainment; entertainment services, namely, providing non-downloadable prerecorded music, information in the field of music, commentary and articles about music, all online via a global computer network; production of television and radio programs; television show production; cable television show production; radio entertainment production; motion picture film production; film editing; special effects animation services for film and video; entertainment in the nature of on-going television, cable television and radio programs featuring music, comedy, dramatic acts, spoken word, cartoons, animation and educational subject matters. providing a variety show distributed over television, cable television, radio, satellite, audio and video media; entertainment, namely, a continuing variety, news, comedy, dramatic and musical show broadcast over television, satellite, audio and video media; theatre productions; entertainment in the nature of traveling tours featuring live music, live drama, live spoken word and live comedy performances; educational and entertainment services, namely, providing motivational and educational speakers; distribution of television programs and radio programs for others; television program syndication; programming on a global computer network; distribution of television programming to cable television systems; cable television programming; television and radio |  |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------|
| | | programming; television scheduling; entertainment services, namely, providing an on-line computer game; providing a computer game that may be accessed network-wide by network users; multimedia entertainment software production services; providing information online relating to computer games and computer enhancements for games | |
| PHARRELL | 21 | Dinnerware, china dinnerware, crystal dinnerware, beverageware, and stemware; beverage glassware and drinking glasses; mugs, cups, goblets, bottles sold empty and glass storage jars sold empty; bottle squeegees, vacuum bottles and barware, namely, seltzer bottles; dewar bottles and vessels; drinking vessels and heat-insulated vessels; bottle stands; wine bottle cradles; glass storage jars, insulating jars and cookie jars; non-metal jars for jams and jellies made of earthenware, glass, porcelain and plastic; beer jugs; drinking steins; flasks; coasters, not made of paper and not being table linen, leather coasters and plastic coasters; barware, namely, high ball glasses, shot glasses, cocktail shakers, cork screws, cork holders, bottle openers, tumblers, wine goblets, carafes, decanters, portable coolers for beverages, namely, portable coolers for wine; wine cooler stands, pitchers, buckets and beverage stirrers; insulating sleeve holders for beverage cans; foam drink holders; bread boxes; household containers for foods; containers for household or kitchen use not made of precious metal; all purpose portable household containers; non-electric kitchen containers not made of precious metal; portable plastic containers for storing household and kitchen goods; canteens; portable coolers, portable beverage coolers and portable beverage dispensers; portable ice chests for food and beverages; thermal insulated containers for food and beverages; thermal insulated tote bags for food and beverages; thermal insulated wrap for cans to keep the contents cold or hot; serviette holders; serviette rings not of precious metal; lunch boxes and pails; tea kettles. cooking and kitchen utensils, namely, cutting boards, wire baskets, steamer baskets, kitchen and serving ladles, pots, metal and glass pans, pie pans, baking dishes, crumb brushes, brushes for basting meat and dishwashing brushes, dish drying racks, oven to table racks, spice | 85/148,228 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------|
| | | racks, poultry rings, recipe boxes, cruets not of precious metal, and cruet stands for oil or vinegar not of precious metal; non-electric coffee servers, tea services, tea infusers, tea balls, tea pots, and non-electric kitchen containers, all of the foregoing not of precious metal; bowls, plates, dishes and dish covers; saucers; serving platters; serving trays not of precious metal; trivets; salt and pepper shakers; toothpicks and toothpick holders; canister sets; napkin holders; napkin rings not of precious metals; table placard holders not of precious metal; boxes for dispensing paper towels; hair brushes and combs; holders for hair brushes and combs; bathroom and beauty products and accessories, namely, dental floss, tooth brushes and toothbrush holders, cup holders, bath brushes, sponges, natural sea sponges, loofah sponges, eyebrow brushes, nail brushes, shaving brushes, shaving brush holders and stands, squeegees for shaving brushes, plastic bath racks, toilet brushes and toilet brush holders; lotion holders, namely, lotion dispensers; soap boxes, brackets, containers, dishes, dispensers and holders; cotton balls and cotton ball dispensers; cosmetic brushes and clothes brushes; clothes drying racks and clothes pins; baby bathtubs; bathroom glass holder not of precious metal; earring organizer board; candle holders, candle rings and candlesticks not of precious metal; candle snuffers; non-electric candelabras, not of precious metal. glass boxes, non-metal decorative boxes in the nature of ceramic tissue box covers, plastic juice box covers, recipe boxes and sandwich boxes; baskets made of straw, cloth, wicker and wood; fitted picnic baskets; plant and flower pots, bowls, baskets and syringes; plastic lids for plant pots; pot cleaning brushes; scraping and scrubbing brushes; vases; figurines made of china, crystal, earthenware, glass, and porcelain; wastepaper baskets; trash containers for household use; non-metal piggy banks; souvenir and decorative plates; perfume burners; perfume vaporizers and sprayers sold empty; shoe horns; shoe brushes, dusting brushes, floor brushes and fireplace brushes; golf brush and brushes for billiard tables; cleaning cloths, polishing cloths, furniture dusters, dust pans and brooms; ironing boards, shaped covers for ironing boards, and holders for household irons | |

| Mark | Class | Goods and Services | Serial No. |
|---|---|---|---|
| PHARRELL WILLIAMS | 21 | Dinnerware, china dinnerware, crystal dinnerware, beverageware, and stemware; beverage glassware and drinking glasses; mugs, cups, goblets, bottles sold empty and glass storage jars sold empty; bottle squeegees, vacuum bottles and barware, namely, seltzer bottles; dewar bottles and vessels; drinking vessels and heat-insulated vessels; bottle stands; wine bottle cradles; glass storage jars, insulating jars and cookie jars; non-metal jars for jams and jellies made of earthenware, glass, porcelain and plastic; beer jugs; drinking steins; flasks; coasters, not made of paper and not being table linen, leather coasters and plastic coasters; barware, namely, high ball glasses, shot glasses, cocktail shakers, cork screws, cork holders, bottle openers, tumblers, wine goblets, carafes, decanters, portable coolers for beverages, namely, portable coolers for wine; wine cooler stands, pitchers, buckets and beverage stirrers; insulating sleeve holders for beverage cans; foam drink holders; bread boxes; household containers for foods; containers for household or kitchen use not made of precious metal; all purpose portable household containers; non-electric kitchen containers not made of precious metal; portable plastic containers for storing household and kitchen goods; canteens; portable coolers, portable beverage coolers and portable beverage dispensers; portable ice chests for food and beverages; thermal insulated containers for food and beverages; thermal insulated tote bags for food and beverages; thermal insulated wrap for cans to keep the contents cold or hot; serviette holders; serviette rings not of precious metal; lunch boxes and pails; tea kettles. cooking and kitchen utensils, namely, cutting boards, wire baskets, steamer baskets, kitchen and serving ladles, pots, metal and glass pans, pie pans, baking dishes, crumb brushes, brushes for basting meat and dishwashing brushes, dish drying racks, oven to table racks, spice racks, poultry rings, recipe boxes, cruets not of precious metal, and cruet stands for oil or vinegar not of precious metal; non-electric coffee servers, tea services, tea infusers, tea balls, tea pots, and non-electric kitchen containers, all of the foregoing not of precious metal; bowls, plates, dishes and dish covers; saucers; serving platters; serving trays not of precious | 85/148,223 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------|
| | | metal; trivets; salt and pepper shakers; toothpicks and toothpick holders; canister sets; napkin holders; napkin rings not of precious metals; table placard holders not of precious metal; boxes for dispensing paper towels; hair brushes and combs; holders for hair brushes and combs; bathroom and beauty products and accessories, namely, dental floss, tooth brushes and toothbrush holders, cup holders, bath brushes, sponges, natural sea sponges, loofah sponges, eyebrow brushes, nail brushes, shaving brushes, shaving brush holders and stands, squeegees for shaving brushes, plastic bath racks, toilet brushes and toilet brush holders; lotion holders, namely, lotion dispensers; soap boxes, brackets, containers, dishes, dispensers and holders; cotton balls and cotton ball dispensers; cosmetic brushes and clothes brushes; clothes drying racks and clothes pins; baby bathtubs; bathroom glass holder not of precious metal; earring organizer board; candle holders, candle rings and candlesticks not of precious metal; candle snuffers; non-electric candelabras, not of precious metal. glass boxes, non-metal decorative boxes in the nature of ceramic tissue box covers, plastic juice box covers, recipe boxes and sandwich boxes; baskets made of straw, cloth, wicker and wood; fitted picnic baskets; plant and flower pots, bowls, baskets and syringes; plastic lids for plant pots; pot cleaning brushes; scraping and scrubbing brushes; vases; figurines made of china, crystal, earthenware, glass, and porcelain; wastepaper baskets; trash containers for household use; non-metal piggy banks; souvenir and decorative plates; perfume burners; perfume vaporizers and sprayers sold empty; shoe horns; shoe brushes, dusting brushes, floor brushes and fireplace brushes; golf brush and brushes for billiard tables; cleaning cloths, polishing cloths, furniture dusters, dust pans and brooms; ironing boards, shaped covers for ironing boards, and holders for household irons | |
| PHARRELL WILLIAMS | 20 | Furniture; bedroom and living room furniture, computer furniture, office furniture, lawn and outdoor furniture, bumper guards for furniture, carpet coasters for protecting furniture legs, fireplace screens, fitted fabric furniture covers, furniture frames, beds, bed frames, box springs, bassinets, furniture parts and partitions, furniture moldings, | 85/148,192 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|------------|
| | | entertainment centers, wardrobes, buffets, drafting tables, cabinets, book rests, book stands, book cases, booster seats, high chairs, cribs, cradles, stools, foot stools, step stools, portable back support for use with chairs, mirrors, non-metal money boxes, non-metal lock boxes, non-metal mail boxes, gift package decorations made of plastic, non-metal key chains and rings, non-metal dog tags, plastic key tags, plastic key chain tags and key rings, plastic novelty license plates, plastic card keys, plastic banners and pennants, fans for personal use, hand fans, screens, non-metal tool boxes and chests, toy boxes, fixed towel dispensers not of metal, bathtub grab bars and rails not of metal, and bathroom vanities; fitted chair covers in the nature of fabrics, linens and ribbons used in dressing chairs and cushions for use in connection with special events and parties; curtain rails and rods; decorative bead curtains; non-metal window trims; free-standing non-metal tool racks, magazine racks, non-metal hat racks, coat stands, plate racks, storage racks, free-standing tool racks, wall-mounted gun racks and non-metal tool racks, picture frames, embroidery frames, leather picture frames, paper photo frames and picture frame moldings; plastic inserts for use as container liners; shelves and shelving, venetian and bamboo blinds; blinds of reed, rattan or bamboo. window blinds and shades; decorative window finials; sleeping bags, mattresses and mattress cushions, air mattresses and inflatable mattresses for use when camping, nap mats, chair pads, chair cushions, chair mats in the nature of a pillow or seat liner, pillows and pillowforms; closet accessories, namely, shoe racks, belt racks, clothes bars, sliding clothes rails and rods, and clothes hangers; bath pillows, bathroom and shaving mirrors; non-metal shower curtain rings and non-metal shower curtain rods; figurines, statues and decorative centerpieces made of bone, ivory, plaster, plastic, fabric, wax or wood; gazing globes; wind chimes; bag resealer in the nature of a plastic clip; bulletin boards | |
| PHARRELL | 20 | Furniture; bedroom and living room furniture, computer furniture, office furniture, lawn and outdoor furniture, bumper guards for furniture, carpet coasters for protecting furniture legs, fireplace | 85/148,188 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------|
| | | screens, fitted fabric furniture covers, furniture frames, beds, bed frames, box springs, bassinets, furniture parts and partitions, furniture moldings, entertainment centers, wardrobes, buffets, drafting tables, cabinets, book rests, book stands, book cases, booster seats, high chairs, cribs, cradles, stools, foot stools, step stools, portable back support for use with chairs, mirrors, non-metal money boxes, non-metal lock boxes, non-metal mail boxes, gift package decorations made of plastic, non-metal key chains and rings, non-metal dog tags, plastic key tags, plastic key chain tags and key rings, plastic novelty license plates, plastic card keys, plastic banners and pennants, fans for personal use, hand fans, screens, non-metal tool boxes and chests, toy boxes, fixed towel dispensers not of metal, bathtub grab bars and rails not of metal, and bathroom vanities; fitted chair covers in the nature of fabrics, linens and ribbons used in dressing chairs and cushions for use in connection with special events and parties; curtain rails and rods; decorative bead curtains; non-metal window trims; free-standing non-metal tool racks, magazine racks, non-metal hat racks, coat stands, plate racks, storage racks, free-standing tool racks, wall-mounted gun racks and non-metal tool racks, picture frames, embroidery frames, leather picture frames, paper photo frames and picture frame moldings; plastic inserts for use as container liners; shelves and shelving, venetian and bamboo blinds; blinds of reed, rattan or bamboo. window blinds and shades; decorative window finials; sleeping bags, mattresses and mattress cushions, air mattresses and inflatable mattresses for use when camping, nap mats, chair pads, chair cushions, chair mats in the nature of a pillow or seat liner, pillows and pillowforms; closet accessories, namely, shoe racks, belt racks, clothes bars, sliding clothes rails and rods, and clothes hangers; bath pillows, bathroom and shaving mirrors; non-metal shower curtain rings and non-metal shower curtain rods; figurines, statues and decorative centerpieces made of bone, ivory, plaster, plastic, fabric, wax or wood; gazing globes; wind chimes; bag resealer in the nature of a plastic clip; bulletin boards | |
| PHARRELL | 18 | All-purpose sports and athletic bags; beach, book, | 85/148,182 |

| Mark | Class | Goods and Services | Serial No. |
|---|---|---|---|
| | | carry-on, duffel, diaper, gym, leather shopping, shoulder, tote and travel bags; fanny packs and waist packs; backpacks; knapsacks; purses; garment bags for travel; satchels; luggage; luggage tags; trunks; suitcases; hat boxes for travel not of paper or cardboard; cosmetic cases and bags sold empty; toiletry and vanity cases sold empty; tool bags sold empty; attaché cases; briefcases; briefcase-type portfolios; document cases; men's clutches; business cases; business card cases; calling and credit card cases; key cases; leather key chains; wallets; banknote holders; billfolds; umbrellas; parasols; walking sticks | |
| PHARRELL WILLIAMS | 18 | All-purpose sports and athletic bags; beach, book, carry-on, duffel, diaper, gym, leather shopping, shoulder, tote and travel bags; fanny packs and waist packs; backpacks; knapsacks; purses; garment bags for travel; satchels; luggage; luggage tags; trunks; suitcases; hat boxes for travel not of paper or cardboard; cosmetic cases and bags sold empty; toiletry and vanity cases sold empty; tool bags sold empty; attaché cases; briefcases; briefcase-type portfolios; document cases; men's clutches; business cases; business card cases; calling and credit card cases; key cases; leather key chains; wallets; bank note holders; billfolds; umbrellas; parasols; walking sticks | 85/148,179 |
| PHARRELL WILLIAMS | 16 | Posters; calendars; temporary tattoos; stickers; decals; iron-on or plastic transfers; bumper stickers; blank cards; gift and greeting cards; motivational cards; occasion and note cards; place, record, score and trading cards; postcards; scrapbooks; stationery; note pads; paper note tablets; writing tablets; note books; folders; bookmarks; paper pennants; binders; writing paper; envelopes; address and appointment books; desk pads; paper tags; passport cases, holders, and covers; desk top and personal organizers; organizers for stationery use; stationery-type portfolios; paper flags; mounts for stamps; rubber stamps; stamp albums; stamp pad inks; stamp pads; sleeves for holding and protecting stamps; paper banners; holders for desk accessories; letter openers, racks and trays; pen and pencil cups; pens; pencils; markers; pen and pencil sets; erasers; drafting and drawing rulers; pencil sharpeners; bookends; book | 85/148,176 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------|
| | | covers and holders; checkbook covers; coin and photograph albums; photographic or art mounts; paper or cardboard picture mounts; photographic prints; photographs; lithographs; decorative paper centerpieces and pencil-top ornaments; picture books; globes; paperweights; paper clip and sign holders; printed paper signs; clip boards; paper party favors; paper emblems; printed emblems; paper identification tags; paper name badges; paper illustration boards; paper flower pot covers; clip boards; paper handkerchiefs; tour books; concert programs; books, magazines, leaflets, folios, journals, newsletters, booklets, pamphlets and brochures, all of the aforesaid featuring music, entertainment, beauty, fashion, lifestyles, home décor, the arts, culture, politics and education | |
| PHARRELL | 16 | Posters; calendars; temporary tattoos; stickers; decals; iron-on or plastic transfers; bumper stickers; blank cards; gift and greeting cards; motivational cards; occasion and note cards; place, record, score and trading cards; postcards; scrapbooks; stationery; note pads; paper note tablets; writing tablets; note books; folders; bookmarks; paper pennants; binders; writing paper; envelopes; address and appointment books; desk pads; paper tags; passport cases, holders, and covers; desk top and personal organizers; organizers for stationery use; stationery-type portfolios; paper flags; mounts for stamps; rubber stamps; stamp albums; stamp pad inks; stamp pads; sleeves for holding and protecting stamps; paper banners; holders for desk accessories; letter openers, racks and trays; pen and pencil cups; pens; pencils; markers; pen and pencil sets; erasers; drafting and drawing rulers; pencil sharpeners; bookends; book covers and holders; checkbook covers; coin and photograph albums; photographic or art mounts; paper or cardboard picture mounts; photographic prints; photographs; lithographs; decorative paper centerpieces and pencil-top ornaments; picture books; globes; paperweights; paper clip and sign holders; printed paper signs; clip boards; paper party favors; paper emblems; printed emblems; paper identification tags; paper name badges; paper illustration boards; paper flower pot covers; clip boards; paper handkerchiefs; tour books; concert | 85/148,173 |

| Mark | Class | Goods and Services | Serial No. |
|---|---|---|---|
| | | programs; books, magazines, leaflets, folios, journals, newsletters, booklets, pamphlets and brochures, all of the aforesaid featuring music, entertainment, beauty, fashion, lifestyles, home décor, the arts, culture, politics and education | |
| PHARRELL | 14 | Jewelry; jewelry findings; gemstone and precious stones; semi-precious stones; pearls; opals; platinum and its alloys; precious metals; charms, chokers, and pendants; lapel pins; ornamental lapel pins; pins being jewelry; body-piercing rings and studs; ear studs; ear clips; tie pins; tie clips; tie bars; tie tacks; tie fasteners; bolo ties with precious metal tips; cuff-links; shirt studs; badges of precious metal; costume jewelry; jewelry chains; jewelry pins for use on hats; hat ornaments of precious metal; holiday ornaments of precious metal; jewelry boxes and cases; key holders of precious metals; key chains of precious metal; watches; watch bracelets; watch accessories, namely, parts of watches; wristwatches; pocket watches; stop watches; watch straps and bands; watch chains and fobs; watch cases; watch boxes; clocks; alarm clocks; clocks incorporating radios; wall clocks; timepieces; boxes for timepieces; figurines, sculptures, busts, figures, statues, statuettes and bottle closures, all of the foregoing of precious metal | 85/148,170 |
| PHARRELL WILLIAMS | 14 | Jewelry; jewelry findings; gemstone and precious stones; semi-precious stones; pearls; opals; platinum and its alloys; precious metals; charms, chokers, and pendants; lapel pins; ornamental lapel pins; pins being jewelry; body-piercing rings and studs; ear studs; ear clips; tie pins; tie clips; tie bars; tie tacks; tie fasteners; bolo ties with precious metal tips; cuff-links; shirt studs; badges of precious metal; costume jewelry; jewelry chains; jewelry pins for use on hats; hat ornaments of precious metal; holiday ornaments of precious metal; jewelry boxes and cases; key holders of precious metals; key chains of precious metal; watches; watch bracelets; watch accessories, namely, parts of watches; wristwatches; pocket watches; stop watches; watch straps and bands; watch chains and fobs; watch cases; watch boxes; clocks; alarm clocks; clocks incorporating radios; wall clocks; timepieces; boxes for timepieces; figurines, sculptures, busts, figures, statues, statuettes and bottle closures, all of the foregoing of precious metal | 85/148,167 |

| Mark | Class | Goods and Services | Serial No. |
|---|---|---|---|
| PHARRELL WILLIAMS | 9 | Musical sound recordings; audio-visual recordings, namely, compact discs, tape cassettes, audio cassettes, audio tapes, audio discs, records, CD-ROMs, video tapes, video cassettes, video discs, DVDs, DATs, MP3s, and laser discs, all featuring music; downloadable musical sound recordings; downloadable video recordings featuring music; downloadable electronic publications in the nature of books, booklets, magazines, journals, manuals, brochures, leaflets, pamphlets and newsletters, all in the field of music, entertainment, beauty, fashion, lifestyles, home décor, the arts, culture, politics and education; electronic publications, namely, books, booklets, magazines, journals, manuals, brochures, leaflets, pamphlets and newsletters, all in the field of music, entertainment, beauty, fashion, lifestyles, home décor, the arts, culture, politics and education, all recorded on CD-ROMs, diskettes, floppy disks, video cassettes, and magnetic tapes; protective eyewear; sunglasses; eyeglasses; eyeglass frames; opera glasses; spectacles; eyeglass, sunglass and spectacle cases; eyeglass, sunglass and spectacle straps; eyeglass, sunglass and spectacle chains; magnets; decorative magnets; refrigerator magnets; novelty magnets; mouse pads; compact disc cases; fitted cases for storage and transportation, namely, cases for compact discs, audio cassettes, video cassettes, CD-ROMs, home video games, computers, computer accessories, cameras, camcorders and portable phones; fitted cases for storage and transportation, namely, cases for home video game accessories in the nature of joysticks, interactive control floor pads or mats, remote control units and machines for use with televisions; computer carrying cases; wrist rests and supports for computer mouse users; wrist rests for computers; computer keyboard wrist pads; binoculars; magnifying glasses; signal and sport whistles. computer game software, programs, cartridges, joysticks, cassettes, discs and instruction manuals sold as a unit therewith; computerized video table games for gaming purposes; electronic game programs; interactive audio game discs containing role playing game and action games; interactive video game programs; interactive multimedia computer game program; | 85/148,162 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------| 
| | | joysticks for video games; machines for playing games of chance; video game interactive remote control units and control floor pads or mats; video game machines for use with televisions; video game output machines for use with televisions; virtual reality game software | |
| PHARRELL | 9 | Musical sound recordings; audio-visual recordings, namely, compact discs, tape cassettes, audio cassettes, audio tapes, audio discs, records, CD-ROMs, video tapes, video cassettes, video discs, DVDs, DATs, MP3s, and laser discs, all featuring music; downloadable musical sound recordings; downloadable video recordings featuring music; downloadable electronic publications in the nature of books, booklets, magazines, journals, manuals, brochures, leaflets, pamphlets and newsletters, all in the field of music, entertainment, beauty, fashion, lifestyles, home décor, the arts, culture, politics and education; electronic publications, namely, books, booklets, magazines, journals, manuals, brochures, leaflets, pamphlets and newsletters, all in the field of music, entertainment, beauty, fashion, lifestyles, home décor, the arts, culture, politics and education, all recorded on CD-ROMs, diskettes, floppy disks, video cassettes, and magnetic tapes; protective eyewear; sunglasses; eyeglasses; eyeglass frames; opera glasses; spectacles; eyeglass, sunglass and spectacle cases; eyeglass, sunglass and spectacle straps; eyeglass, sunglass and spectacle chains; magnets; decorative magnets; refrigerator magnets; novelty magnets; mouse pads; compact disc cases; fitted cases for storage and transportation, namely, cases for compact discs, audio cassettes, video cassettes, CD-ROMs, home video games, computers, computer accessories, cameras, camcorders and portable phones; fitted cases for storage and transportation, namely, cases for home video game accessories in the nature of joysticks, interactive control floor pads or mats, remote control units and machines for use with televisions; computer carrying cases; wrist rests and supports for computer mouse users; wrist rests for computers; computer keyboard wrist pads; binoculars; magnifying glasses; signal and sport whistles. computer game software, programs, cartridges, joysticks, cassettes, discs and | 85/148,159 |

| Mark | Class | Goods and Services | Serial No. |
|---|---|---|---|
| | | instruction manuals sold as a unit therewith; computerized video table games for gaming purposes; electronic game programs; interactive audio game discs containing role playing game and action games; interactive video game programs; interactive multimedia computer game program; joysticks for video games; machines for playing games of chance; video game interactive remote control units and control floor pads or mats; video game machines for use with televisions; video game output machines for use with televisions; virtual reality game software | |
| PHARRELL WILLIAMS | 3 | Cosmetics; facial makeup, concealers, blushers, facial powders, foundation makeup, eye makeup, eye pencils, eyebrow pencils, mascara, false eyelashes, face and body glitter, cosmetic compacts, cosmetic pencils, lipstick, lipstick cases, lipstick holders, lip gloss, lip pomades, lip pencils, makeup removers, makeup applicators in the nature of cotton swabs for cosmetic purposes, eye creams, facial cleansers, toners, facial exfoliants and scrubs, facial creams, facial moisturizers, facial lotions and non-medicated facial treatment preparations in the nature of facial emulsions, skin cleaning cream, skin peeling gel, skin firming cream, skin firming facial mask, skin firming face powder, skin renewal serum and skin lifting serum, wrinkle removing skin care preparations, nail polishes, nail polish base coat, nail polish top coat, nail strengtheners, nail hardeners, nail polish removers, nail creams, cuticle removing preparations, nail tips, and nail buffing preparations; beauty milks, skin moisturizers and skin moisturizer masks, skin conditioners, hand creams, massage oils, essential oils for personal use, talcum powder, perfumed powders, bath beads, bath crystals, bath foam, bath gels, bath oils, bath powders, bath salts, face wash, skin cleansers, skin highlighter, body scrubs, body fragrances, fragrances for personal use, body and hand lotions, body gels, shower gels, body oils, body powders, body exfoliants, body masks, body mask creams and lotions, shaving preparations, after shave lotions, shaving balm, shaving cream, shaving gel, skin abrasive preparations, non-medicated skin creams and skin lotions for relieving razor burns, non-medicated lip care preparations, lip cream, | 85/148,146 |

| Mark | Class | Goods and Services | Serial No. |
|---|---|---|---|
| | | sunscreen preparations, suntanning preparations and after-sun lotions; cosmetic sun-protecting preparations. sun tan oils; self-tanning preparations, namely, self tanning milk and cream, accelerated tanning cream, self-tanning lotions, gels and sprays; perfume, perfume oils, cologne, eau de toilette, eau de perfume, eau de cologne and toilette water; toothpaste, deodorant and antiperspirant; cosmetic pads, pre-moistened cosmetic wipes, pre-moistened cosmetic tissues and towelettes; cotton sticks for cosmetic purposes; all purpose cotton swabs for personal use and cosmetic purposes; non-medicated topical skin creams, ointments, gels, toners, lotions, sprays and powders for cosmetic use and for the prevention and treatment of wrinkles and sunburn; non-medicated skin creams and lotions with essential oils for use in aromatherapy; essential oils for use in aromatherapy; hair care products, namely, shampoos, conditioners, mousse, gels, frosts, creams, rinses, sprays, hair color, hair waving lotion, permanent wave preparations, hair lighteners, hair dyes, hair emollients, hair mascara, hair pomades, hair color removers, hair relaxing preparations, hair styling preparations, hair removing cream, and hair care preparations; astringents for cosmetic purposes; baby wipes; disposable wipes impregnated with cleansing chemicals or compounds for personal hygiene and household use; incense; room fragrances; fragrance emitting wicks for room fragrances; sachets; sachet-like eye pillows containing fragrances; scented ceramic stones; scented linen sprays and scented room sprays; scented oils used to produce aromas when heated; scented pine cones; potpourri; aromatic pillows comprising potpourri in fabric containers | |
| SOCIAL ORDER | 25 | Clothing, namely, shirts, T-shirts, under shirts, night shirts, rugby shirts, polo shirts, cardigans, jerseys, uniforms, scrubs not for medical purposes, smocks, dress shirts, bottoms, pants, jeans, culottes, cargo pants, capris, denim jeans, overalls, shorts, boxer shorts, tops, tank tops, tankinis, sweat shirts, hooded sweat shirts, sweat jackets, sweat shorts, sweat pants, wraps, warm-up suits, blouses, skirts, dresses, sweaters, vests, pullovers, singlets, snow suits, parkas, capes, anoraks, ponchos, cloaks, shrugs, shawls, pashminas, jackets, reversible jackets, wind- | 85/758,619 |

| Mark | Class | Goods and Services | Serial No. |
|---|---|---|---|
| | | resistant jackets, sports jackets, golf and ski jackets, jean jackets, coats, over coats, blazers, suits, turtlenecks, swimwear, beachwear, tennis wear, surf wear, ski wear, base layers, infantwear, booties, socks, headwear, hats, caps, skull caps, swim caps, visors, headbands, wrist bands, sweat bands, ear muffs, aprons, scarves, bandanas, belts, suspenders, neckwear, ties, pocket squares, underwear, briefs, bras, thongs, G-strings, loungewear, robes, underclothes, pajamas, sleepwear, night gowns, lingerie, leg warmers, hosiery, leggings, tights, leotards, body suits, unitards, body shapers, gloves, mittens, rain slickers, rainwear, foul weather gear, footwear, shoes, mules, sneakers, boots, galoshes, sandals, flip-flops, and slippers | |
| SOCIAL ORDER | 35 | Retail stores, wholesale stores, mail order services, on-line ordering services and on-line retail store services, and retail store services available through computer communications and interactive television, all of the aforesaid featuring cosmetics, hair, nail, bath and body products, recorded product and videos, namely, musical sound and video recordings in various media, music related items, namely, digital audio, CD and DVD players and recorders, promotional items, namely, mouse pads, magnets, paper weights, snow globes, lunch boxes, garbage pails, piggy banks, transport cases for CDs, videos, phones, pagers, handheld communication devices, computers and computer equipment, mugs, glasses and coasters, computer goods, software, games, toys and playthings, plush toys, teddy bears and toy accessories therefor, dolls and accessories therefor, sporting goods and sports equipment, bags and leather accessories therefor, clothing and accessories therefor, footwear, eyewear and eyewear accessories therefor, jewelry and watches and accessories therefor, clocks, printed promotional matter, namely, posters, calendars, stickers, decals, scrap books, post cards, temporary tattoos, book marks, stationery, and related matter, namely, books and publications, novelty items in the nature of novelty pins, buttons, patches and emblems, ornamental pins and buttons, hair accessories, picture frames, bedding and linens | 85/758,635 |
| SOCIAL ORDER | 35 | Retail stores, wholesale stores, mail order services, on-line ordering services and on-line retail store | 77/678,958 |

| Mark | Class | Goods and Services | Serial No. |
|---|---|---|---|
| | | services, and retail store services available through computer communications and interactive television, all of the aforesaid featuring cosmetics, hair, nail, bath and body products, recorded product and videos, namely, musical sound and video recordings in various media, music related items, namely, digital audio, CD and DVD players and recorders, promotional items, namely, mouse pads, magnets, paper weights, snow globes, lunch boxes, garbage pails, piggy banks, transport cases for CDs, videos, phones, pagers, handheld communication devices, computers and computer equipment, mugs, glasses and coasters, computer goods, software, games, toys and playthings, plush toys, teddy bears and toy accessories therefor, dolls and accessories therefor, sporting goods and sports equipment, bags and leather accessories therefor, clothing and accessories therefor, footwear, eyewear and eyewear accessories therefor, jewelry and watches and accessories therefor, clocks, printed promotional matter, namely, posters, calendars, stickers, decals, scrap books, post cards, temporary tattoos, book marks, stationery, and related matter, namely, books and publications, novelty items in the nature of novelty pins, buttons, patches and emblems, ornamental pins and buttons, hair accessories, picture frames, bedding and linens | |
| SOCIAL ORDER | 18 | All-purpose sports and athletic bags, fanny packs, backpacks, knapsacks, sports packs, waist packs, gym bags, duffel bags, diaper bags, tote bags, book bags, hand bags, purses, clutch purses, change purses, shoulder bags, carry-on bags, travel bags, garment bags for travel, leather shopping bags, beach bags, satchels, luggage, luggage tags, trunks, suitcases, cosmetic cases sold empty, toiletry cases sold empty, vanity cases sold empty, cosmetic bags sold empty, tool bags sold empty, attaché cases, briefcases, briefcase-type portfolios, men's clutch bags, business cases, business card cases, credit card cases, calling card cases, key cases, leather key chains, coin pouches, wallets, billfolds, umbrellas and parasols | 77/678,947 |
| SOCIAL ORDER | 14 | Jewelry; jewelry findings; pendants; lapel pins; ornamental lapel pins; pins being jewelry; ear clips; tie pins and tie clips; bolo ties with precious metal tips; cuff-links; badges of precious metal; costume jewelry; jewelry chains; jewelry pins for use on hats; | 77/678,945 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|------------|
| | | hat ornaments of precious metal; ornamental pins made of precious metal; shoe ornaments made of precious metal; holiday ornaments of precious metal; jewelry boxes and cases of precious metal; watches; wristwatches; pocket watches; stop watches; watch straps and bands; watch chains and watch fobs; watch cases and parts thereof; clocks; alarm clocks; clocks incorporating radios; wall clocks; figurines and sculptures of precious metal; bottle closures of precious metal; busts, figures, figurines, statues, and statuettes of precious metal | |
| SOCIAL ORDER | 3 | Cosmetics; facial makeup, concealers, blushers, facial powders, foundation makeup, eye makeup, eye pencils, eyebrow pencils, mascara, false eyelashes, cosmetic compacts, cosmetic pencils, lipstick, lip gloss, lip pomades, lip pencils, makeup removers, makeup applicators in the nature of cotton swabs for cosmetic purposes, eye creams, facial cleansers, toners, facial exfoliants and scrubs, facial creams, facial moisturizers, facial lotions and non-medicated facial treatments in the nature of facial emulsions and facial masks, wrinkle removing skin care preparations, nail care preparations, nail polishes, nail polish removers, nail creams, cuticle removing preparations, nail buffing preparations, skin moisturizers and skin moisturizer masks, skin conditioners, hand creams, massage oils, essential oils for personal use, talcum powder, bath beads, bath crystals, bath foam, bath gels, bath oils, bath powders, bath salts, face wash, skin cleansers, body scrubs, body fragrances, body and hand lotions, body gels, shower gels, body oils, body powders, body exfoliants, body masks, body mask creams and lotions, shaving preparations, after shave lotions, shaving balm, shaving cream, shaving gel, skin abrasive preparations, non-medicated skin creams and skin lotions for relieving razor burns, non-medicated lip care preparations, lip cream, sunscreen preparations, suntanning preparations and after-sun lotions; self-tanning preparations, namely, self tanning milk and cream, accelerated tanning cream, self-tanning lotions, gels and sprays; perfume, cologne, eau de toilette, eau de perfume, eau de cologne and toilette water; toothpaste, deodorant and antiperspirant; cosmetic pads, pre-moistened | 77/678,893 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|-------------------|-----------|
| | | cosmetic wipes, pre-moistened cosmetic tissues and towelettes; cotton sticks for cosmetic purposes. all purpose cotton swabs for personal use and cosmetic purposes; non-medicated topical skin creams, ointments for the prevention and treatment of sunburn, gels, namely, aloe vera gel for cosmetic purposes, skin toners, body lotions, body sprays and body powders; aromatherapy creams, lotions and oils; hair care products, namely, shampoos, conditioners, mousse, gels, frosts, creams, rinses, sprays, hair color, hair waving lotion, permanent wave preparations, hair lighteners, hair dyes, hair emollients, hair mascara, hair pomades, hair color removers, hair relaxing preparations, hair styling preparations, hair removing cream, and hair care preparations; hair dressings for men; baby wipes; disposable wipes impregnated with cleansing chemicals or compounds for personal hygiene and household use; incense; room fragrances; fragrance emitting wicks for room fragrances; sachets; sachet-like eye pillows containing fragrances; scented ceramic stones; scented linen sprays and scented room sprays; scented oils used to produce aromas when heated; scented pine cones; potpourri; aromatherapy pillows comprising potpourri in fabric containers | |
| SOCIAL ORDER | 25 | Clothing, namely, shirts, T-shirts, under shirts, night shirts, rugby shirts, polo shirts, cardigans, jerseys, uniforms, athletic uniforms, pants, trousers, slacks, jeans, denim jeans, culottes, cargo pants, overalls, coveralls, jumpers, jump suits, shorts, boxer shorts, tops, crop tops, tank tops, halter tops, sweat shirts, sweat shorts, sweat pants, wraps, warm-up suits, jogging suits, track suits, blouses, skirts, dresses, gowns, sweaters, vests, fleece vests, pullovers, snow suits, parkas, capes, anoraks, ponchos, jackets, reversible jackets, coats, blazers, suits, turtlenecks, cloth ski bibs, swimwear, beachwear, tennis wear, surf wear, ski wear, infantwear, baby bibs not of paper, cloth diapers, caps, swim caps, berets, beanies, hats, visors, headbands, wrist bands, sweat bands, headwear, ear muffs, aprons, scarves, bandanas, belts, suspenders, neckwear, neckties, ties, neckerchiefs, ascots, underwear, briefs, swim and bathing trunks, bras, sports bras, brassieres, bustiers, | 77/678,952 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------| 
| | | corsets, panties, garters and garter belts, teddies, girdles, foundation garments, singlets, socks, loungewear, robes, bathrobes, underclothes, pajamas, sleepwear, night gowns, lingerie, camisoles, negligees, chemises, chemisettes, slips, sarongs, leg warmers, hosiery, pantyhose, body stockings, knee highs, leggings, tights, leotards, body suits, unitards, body shapers, gloves, mittens, footwear, shoes, sneakers, boots, galoshes, sandals, flip-flops, zori, slippers and rainwear | |
| SOCIAL ORDER | 9 | Protective eyewear; eyeglasses and eyeglass frames; sunglasses and sunglass frames; clip-on sunglasses; opera glasses; spectacles and spectacle frames; lenses for eyeglasses, sunglasses and spectacles; eyeglass, sunglass and spectacle cases; eyeglass, sunglass and spectacle straps; eyeglass, sunglass and spectacle chains; goggles for sports; motorcycle goggles | 77/678,944 |
| SEXIFY | 25 | Clothing, namely, lingerie, underwear, thermal underwear, long underwear, briefs, swim and bathing trunks, bras, sports bras, brassieres, bustiers, corsets, panties, thongs, G-strings, garters and garter belts, teddies, girdles, foundation garments, singlets, socks, loungewear, robes, underclothes, pajamas, sleepwear, night gowns, nighties, camisoles, negligees, chemises, chemisettes, slips, sarongs, leg warmers, hosiery, pantyhose, body stockings, knee highs, leggings, tights, leotards, body suits, unitards, body shapers, shirts, long-sleeved shirts, T-shirts, under shirts, night shirts, rugby shirts, polo shirts, cardigans, jerseys, uniforms, scrubs not for medical purposes, smocks, dress shirts, pants, trousers, slacks, jeans, culottes, cargo pants, stretch pants, denim jeans, overalls, coveralls, jumpers, jump suits, shorts, boxer shorts, tops, stretch tops, tube tops, crop tops, tank tops, tankinis, halter tops, sweat shirts, hooded sweat shirts, sweat jackets, sweat shorts, sweat pants, wraps, warm-up suits, jogging suits, track suits, play suits, blouses, skirts, dresses, gowns, sweaters, vests, fleece vests, pullovers, snow suits, parkas, capes, anoraks, ponchos, cloaks, shrugs, shawls, pashminas, jackets, dinner jackets, reversible jackets, wind-resistant jackets, shell jackets, sports jackets, golf and ski jackets, jean jackets, coats, heavy coats, over coats, top coats, petticoats, blazers, suits, tuxedos, cummerbunds, cuffs, collars, removable collars, | 85/605,683 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------|
| | | collar protectors, turtlenecks, cloth ski bibs, swimwear, beachwear, tennis wear, surf wear, ski wear, layettes, infantwear, infants sleepers, booties, baby bibs not of paper, caps, swim caps, berets, beanies, hats, visors, headbands, wrist bands, sweat bands, headwear, ear muffs, aprons, scarves, bandanas, belts, suspenders, neckwear, ties, neckerchiefs, pocket squares, ascots, gloves, mittens, rain slickers, rainwear, footwear, shoes, mules. sneakers, boots, galoshes, sandals, flip-flops, and slippers | |
| SEXIFY | 3 | Cosmetics; facial makeup, concealers, blushers, facial powders, foundation makeup, eye makeup, eye pencils, eyebrow pencils, mascara, false eyelashes, face and body glitter, cosmetic compacts, cosmetic pencils, lipstick, lipstick cases, lipstick holders, lip gloss, lip pomades, lip pencils, makeup removers, makeup applicators in the nature of cotton swabs for cosmetic purposes, eye creams, facial cleansers, toners, facial exfoliants and scrubs, facial creams, facial moisturizers, facial lotions and non-medicated facial treatments in the nature of facial emulsions and facial masks, wrinkle removing skin care preparations, nail polishes, nail polish base coat, nail polish top coat, nail strengtheners, nail hardeners, nail polish removers, nail creams, cuticle removing preparations, nail tips, and nail buffing preparations; beauty milks, skin moisturizers and skin moisturizer masks, skin conditioners, hand creams, massage oils, essential oils for personal use, talcum powder, perfumed powders, bath beads, bath crystals, bath foam, bath gels, bath oils, bath powders, bath salts, face wash, skin cleansers, skin highlighter, body scrubs, body fragrances, fragrances for personal use, body and hand lotions, body gels, shower gels, body oils, body powders, body exfoliants, body masks, body mask creams and lotions, shaving preparations, after shave lotions, shaving balm, shaving cream, shaving gel, skin abrasive preparations, non-medicated skin creams and skin lotions for relieving razor burns, non-medicated lip care preparations, lip cream, sunscreen preparations, suntanning preparations and after-sun lotions; cosmetic sun-protecting preparations; sun tan oils; self-tanning preparations, namely, self tanning milk and cream, | 85/605,667 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------|
| | | accelerated tanning cream, self-tanning lotions, gels and sprays. non-medicated ointments for the treatment of sunburns; non-medicated toiletries; perfume, perfume oils, cologne, eau de toilette, eau de perfume, eau de cologne and toilette water; toothpaste, deodorant and antiperspirant; cosmetic soaps, perfumed soaps, liquid soaps, hand, facial and bath soaps, deodorant soaps, shaving soaps, soap powder, toilet soaps, soaps for body care, and soaps for personal use; cosmetic pads, pre-moistened cosmetic wipes, pre-moistened cosmetic tissues and towelettes; cotton sticks for cosmetic purposes; all purpose cotton swabs for personal use and cosmetic purposes; non-medicated topical skin creams, ointments, gels, toners, and lotions; topical skin sprays for cosmetic purposes; aromatic creams, lotions and oils; hair removing cream; astringents for cosmetic purposes; baby wipes; disposable wipes impregnated with chemicals or compounds for personal hygiene and household use; incense; room fragrances; fragrance emitting wicks for room fragrances; sachets; sachet-like eye pillows containing fragrances; scented ceramic stones; scented linen sprays and scented room sprays; scented oils used to produce aromas when heated; scented pine cones; potpourri; aromatherapy pillows comprising potpourri in fabric containers | |
| PINK SLIME | 41 | Entertainment in the nature of a live musical performer; entertainment in the nature of live performances by a musical artist; entertainment, namely, live music concerts; live performances featuring prerecorded vocal and instrumental performances viewed on a big screen; record production; music production; audio recording and production; videotape production; motion picture song production; production of video discs for others; recording studios; entertainment services, namely, production and distribution of musical audio and video programs; production and distribution of musical audio and video recordings for broadcast; music composition and transcription for others; song writing services; music publishing services; entertainment, namely, personal appearances by a musician or entertainer; entertainment services namely live, televised and movie appearances by a | 85/650,961 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|------------|
| | | professional entertainer; entertainment services, namely, providing a web site featuring musical performances, musical videos, related film clips, and photographs; entertainment services, namely, providing prerecorded music, information in the field of music, commentary and articles about music, all online via a global computer network; entertainment in the nature of live traveling tours by a professional entertainer featuring music; entertainment services, namely, presenting non-downloadable ringtones, pre-recorded music, video and graphics to mobile communications devices via a global computer network and wireless networks | |
| PINK SLIME | 9 | Musical sound recordings; audio-visual recordings, namely, compact discs, tape cassettes, audio cassettes, audio tapes, audio discs, phonograph records, CD-ROMs, video tapes, video cassettes, video discs, DVDs, digital audio tapes (DATs), downloadable MP3 files, and laser discs, all featuring music, sound tracks, television programs and motion pictures; downloadable musical sound recordings; downloadable video recordings featuring music; downloadable electronic publications the nature of books, magazines, journals, brochures, leaflets, pamphlets and newsletters, all the field of music and entertainment; decorative magnets; refrigerator magnets; novelty magnets; mouse pads; compact disc cases and covers; face plates for cell phones; jackets for video cassettes, tapes and discs; fitted cases for storage and transportation, namely, cases for compact discs, audio cassettes, video cassettes, CD-ROMs, home video games, computers, cameras, camcorders and portable phones; computer carrying cases; protective eyewear; eyeglasses and eyeglass frames; sunglasses and sunglass frames; eyeglass and sunglass cases; downloadable music, ring tones, graphics, and electronic games via the Internet and wireless devices; downloadable wireless entertainment via the internet and wireless devices, namely, ring tones, screen savers and images, and wallpaper | 85/650,920 |
| PINK SLIME | 25 | Clothing, namely, shirts, long-sleeved shirts, T-shirts, under shirts, polo shirts, cardigans, jerseys, bottoms, shorts, boxer shorts, tops, stretch tops, crop tops, tank tops, tankinis, sweat shirts, hooded sweat shirts, | 85/650,956 |

| Mark | Class | Goods and Services | Serial No. |
|------|-------|--------------------|-----------|
|      |       | sweat jackets, sweat shorts, sweat pants, vests, pullovers, jackets, sports jackets, turtlenecks, swimwear, beachwear, caps, hats, visors, headbands, wrist bands, sweat bands, headwear, aprons, scarves, bandanas, belts, neckwear, underwear, socks, loungewear, robes, underclothes, pajamas, sleepwear, hosiery, gloves, rainwear, footwear, flip-flops, and slippers |           |

**The Parties' Pre-Suit Correspondence**

37.     On December 4, 2012, Defendants sent Plaintiff a letter notifying Plaintiff of Defendants' concerns and requesting that Plaintiff stop the use of I AM OTHER and abandon its applications.  A true and correct copy of Defendants' demand letter to Plaintiff is attached hereto as **Exhibit I**.  In that letter, Defendants explained the likelihood of confusion amongst consumers engendered by Plaintiff's use of the I AM OTHER mark for promoting musical artists and online programming in connection with its services offered under I AM OTHER.  Defendants further explained how any unauthorized use of the trademark I AM by Plaintiff would be confusingly similar to will.i.am's Family of Marks, in that it would cause will.i.am's fans, as well as prospective and actual purchasers of his goods and services, to erroneously believe that will.i.am had approved or licensed Plaintiff's use and registration of I AM, or was somehow affiliated or connected with Plaintiff or Mr. Williams, when in fact will.i.am has not sponsored, licensed or approved Plaintiff's or Mr. William's activities in any respect.  Further, Defendants explained how Plaintiff's use of the I AM formative would erode the association of the I AM mark Defendants and Defendants' goods and services.

38.     In an effort to resolve this matter without litigation, Defendants requested a voluntary phase out of the I AM OTHER trademark.  Defendants further informed Plaintiff that they had filed extensions of their time to oppose Plaintiff's eight "intent-to-use" trademark applications for the mark I AM OTHER, and would have to oppose the applications if a resolution could not be reached before the deadlines to oppose Plaintiff's multitude of applications.

39.     Plaintiff responded to Defendants by letter dated December 12, 2012, wherein Plaintiff disputed the likelihood of consumer confusion.  Plaintiff also rejected the terms Defendants suggested as a means of resolving the parties' dispute, proposed no alternative terms of its own, and stated that "[i]f we do not receive your assurance by December 18, 2012 that Adams will not be challenging our client's use or registration of the I AM OTHER marks, we will take all necessary measures to protect our client's rights."  A true and correct copy of Plaintiff's December 12, 2012 letter is attached hereto as **Exhibit J**.

40.     On December 28, 2012, Defendants responded to Plaintiff, pointing out that any argument that there is no likelihood of confusion between WILL.I.AM and I AM OTHER ignores Defendants' rights in the will.i.am Family of Marks.  Moreover, as Defendants pointed out in their December 28, 2012 letter, Plaintiff's citation of third party I AM formative registrations for cosmetics and clothing as alleged evidence that Defendants' marks are somehow weak is unpersuasive because none of the registrants are well known as musicians in the entertainment industry.  As Defendants further highlighted, Plaintiff's citation of other musicians using I AM formative marks is equally unpersuasive because none of these musicians collaborated with will.i.am in the way that Mr. Williams has, and none of them appear to have the same visibility and recognition in the entertainment industry as Mr. Williams.

41.     Despite their disagreement with Plaintiff's positions, Defendants reiterated their belief that there was a way to resolve this dispute amicably, and suggested modifications to the I AM OTHER trademark that would not be objectionable to Defendants.  In addition, to allow the parties additional time to discuss a mutually satisfactory resolution, Defendants confirmed Plaintiff's willingness to consent to a 60-day extension of the deadline to oppose the I AM OTHER trademark applications.

42.     By letter dated January 15, 2013, Plaintiff simply rehashed its earlier positions and raised inconsequential questions regarding Defendants' ownership of the will.i.am Family of Marks.  In that letter, Plaintiff discounted the resolution proposed by Defendants, maintaining its earlier position that Plaintiff refused to abandon its use of the I AM OTHER mark.  Instead,

Plaintiff suggested as a purported concession, that the word "other" would "substantially appear as the dominant portion of the I AM OTHER mark," even though Plaintiff contends that is already the case.

43.     Unable to reach agreement, in March 2013 and May 2013, and as required by the TTAB rules of practice, Defendants filed with the TTAB Notices of Opposition to each of Plaintiff's eight "intent-to-use" applications.

44.     Contradicting Plaintiff's purported interest in coming to an amicable resolution, yet consistent with the threat in its December 12, 2012 letter and with Plaintiff's or its principal's habit of filing pre-emptory declaratory judgment actions, Plaintiff sent Defendants an email on July 1, 2013, informing them that Plaintiff had filed the instant complaint for declaratory judgment and attaching a copy of the complaint.  Plaintiff filed this declaratory judgment action to preempt the filing by Defendants of an infringement action in California, espousing the theory that the best defense is a good offense.  On the information and belief, Plaintiff also filed this declaratory judgment action to gain media attention and try this case in the media with one-sided and misleading allegations, particularly as to the status of the applications to register most of the will.i.am Family of Marks.

45.     On July 12, 2013, Defendants moved to suspend the eight opposition proceedings pending the outcome of this case in order to avoid inconsistent rulings between the TTAB and this Court and to enable the parties to resolve their dispute in the most efficient manner possible, if Plaintiff wishes to engage in settlement in earnest.

## FIRST CAUSE OF ACTION

### (Trademark Infringement – 15 U.S.C. § 1114 and Common Law)

46.      Defendants repeat and reallege each and every allegation of paragraphs 1 through 45, above, as though fully set forth herein.

47.     Plaintiff has used in commerce, without Defendants' permission, the I AM OTHER mark in a manner that is likely to cause confusion, mistake or deception with respect to Defendants and the will.i.am Family of Marks, and is likely to cause confusion or

mistake and to deceive purchasers as to the affiliation, connection, approval, sponsorship or association of Defendants and/or their goods, services and commercial activities, on the one hand, with Plaintiff and/or its goods, services or commercial activities, on the other hand.

48.     Plaintiff's acts constitute infringement of the will.i.am Family of Marks in violation of the common law and of the I AM mark and WILL.I.AM mark under 15 U.S.C. § 1114.

49.     As a direct and proximate result of Plaintiff's wrongful acts, Defendants have suffered and continue to suffer and/or are likely to suffer damage to their trademarks, business reputation and goodwill.  Plaintiff will continue to use, unless restrained, the I AM OTHER mark or marks confusingly similar to the will.i.am Family of Marks and will cause irreparable damage to Defendants.  Defendants have no adequate remedy at law and are entitled to an injunction restraining Plaintiff, its officers, agents, and employees, and all persons acting in concert with Plaintiff, from engaging in further acts of infringement.

50.     Defendants are further entitled to recover from Plaintiff the actual damages that they sustained and/or are likely to sustain as a result of Plaintiff's wrongful acts.

51.     Defendants are further entitled to recover from Plaintiff the gains, profits and advantages that Plaintiff has obtained as a result of its wrongful acts.

52.     Because of the willful nature of Plaintiff's wrongful acts, Defendants are entitled to an award of punitive damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (Dilution--15 U.S.C.§ 1125(c); New York Gen. Bus. L. § 360-l)

53.     Defendants repeat and reallege each and every allegation of paragraphs 1 through 52 above, as though fully set forth herein.

54.     Defendants have used the I AM mark and WILL.I.AM mark and many of the other will.i.am Family of Marks to identify its goods and services before Plaintiff began promoting and offering services under, or otherwise using, the I AM OTHER mark.  The I AM

-50-

mark and WILL.I.AM mark and many of the other will.i.am Family of Marks are inherently distinctive and have acquired distinction through Defendants' extensive, continuous, and exclusive use of these marks.

55.     The I AM mark and WILL.I.AM mark and many of the other will.i.am Family of Marks are famous and distinctive within the meaning of 15 U.S.C. §§ 1125(c)(1) and 1127 and New York Gen. Bus. L. § 360-l, and were famous before Plaintiff used the I AM OTHER mark.

56.     Plaintiff's use of the I AM OTHER mark is likely to dilute the distinctive quality of Defendants' I AM mark and WILL.I.AM mark and many of the other will.i.am Family of Marks in violation of  15 U.S.C. § 1125(c) and New York Gen. Bus. L. § 360-l.

57.     Plaintiff's acts complained of herein are likely to damage Defendants irreparably. Defendants have no adequate remedy at law for such wrongs and injuries.  The damage to Defendants includes harm to their trademarks, goodwill and reputation that money cannot compensate.  Defendants are, therefore, entitled to a preliminary and permanent injunction enjoining Plaintiff's use of the I AM OTHER mark, or any marks dilutive of Defendants' I AM mark, the WILL.I.AM mark, and the remaining will.i.am Family of Marks in connection with the promotion, advertisement and sale of any goods, services or commercial activities by Plaintiff.

58.     Defendants are further entitled to recover from Plaintiff their actual damages sustained by Defendants as a result of Plaintiff's wrongful acts.  Defendants are presently unable to ascertain the full extent of the monetary damages they have suffered by reason of Plaintiff's acts of dilution.

59.     Defendants are further entitled to recover from Plaintiff the gains, profits and advantages Plaintiff has obtained as a result of its wrongful acts.  Defendants are presently unable to ascertain the extent of the gains, profits and advantages Plaintiff has realized by reason of Plaintiff's willful acts of dilution.

60.     Because of the willful nature of Plaintiff's actions, Defendants are entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118.

## THIRD CAUSE OF ACTION

### (False Designation of Origin – 15 U.S.C. § 1125(a))

61.      Defendants repeat and reallege each and every allegation of paragraphs 1 through 60 above, as though fully set forth herein.

62.      Plaintiff's actions as alleged herein constitute a false designation of origin, affiliation or sponsorship and unfair competition in violation of 15 U.S.C. § 1125(a).

63.      As a direct and proximate result of Plaintiff's wrongful acts, Defendants have suffered and continue to suffer and/or are likely to suffer damage to their trademark, business reputation, business activities and goodwill.  Plaintiff will continue to use, unless restrained, the I AM OTHER mark or marks confusingly similar to the will.i.am Family of Marks and will cause irreparable damage to Defendants.  Defendants have no adequate remedy at law and are entitled to an injunction restraining Plaintiff, its officers, agents, and employees, and all persons acting in concert with Plaintiff, from engaging in further acts of infringement.

64.      Defendants are further entitled to recover from Plaintiff the actual damages that they sustained and/or are likely to sustain as a result of Plaintiff's wrongful acts.

65.      Defendants are further entitled to recover from Plaintiff the gains, profits and advantages that Plaintiff has obtained as a result of its wrongful acts.

66.      Because of the willful nature of Plaintiff's wrongful acts, Defendants are entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117 and increased or punitive damages under New York law.

## FOURTH CAUSE OF ACTION

### (Bar of Trademark Applications under 15 U.S.C. § 1119)

67.      Defendants repeat and reallege each and every allegation of paragraphs 1 through 66, above, as though fully set forth herein.

68.      Defendants seek to bar registration of the mark I AM OTHER as shown in Serial No. 85/640,747 (Class 3); Serial No. 85/640,753 (Class 9); Serial No. 85/640,758 (Class 14); Serial No. 85/640,768 (Class 16); Serial No. 85/640,776 (Class 18); Serial No. 85/640,784 (Class

25); Serial No. 85/640,794 (Class 35); and Serial No. 85/640,797 (Class 41) under 15 U.S.C. §§ 1051 *et seq*.

69.     On June 1, 2012, Plaintiff filed its application to register I AM OTHER in International Class 3 for "cosmetics; facial makeup, concealers, blushers, facial powders, foundation makeup, eye makeup, eye pencils, eyebrow pencils, mascara, false eyelashes, face and body glitter, cosmetic compacts, cosmetic pencils, lipstick, lipstick cases, lipstick holders, lip gloss, lip pomades, lip pencils, makeup removers, makeup applicators in the nature of cotton swabs for cosmetic purposes, eye creams, facial cleansers, toners, facial exfoliants and scrubs, facial creams, facial moisturizers, facial lotions and non-medicated facial treatments in the nature of facial emulsions, wrinkle removing skin care preparations, nail polishes, nail polish base coat, nail polish top coat, nail strengtheners, nail hardeners, nail polish removers, nail creams, cuticle removing preparations, nail tips, and nail buffing preparations; beauty milks, skin moisturizers and skin moisturizer masks, skin conditioners, hand creams, massage oils, essential oils for personal use, talcum powder, perfumed powders, bath beads, bath crystals, bath foam, bath gels, bath oils, bath powders, bath salts, face wash, skin cleansers, skin highlighter, body scrubs, body fragrances, fragrances for personal use, body and hand lotions, body gels, shower gels, body oils, body powders, body exfoliants, body masks, body mask creams and lotions, shaving preparations, after shave lotions, shaving balm, shaving cream, shaving gel, skin abrasive preparations, non-medicated skin creams and skin lotions for relieving razor burns, non-medicated lip care preparations, lip cream, sunscreen preparations, suntanning preparations and after-sun lotions; cosmetic sun-protecting preparations; sun tan oils; self-tanning preparations, namely, self tanning milk and cream, accelerated tanning cream, self-tanning lotions, gels and sprays; non-medicated ointments for the treatment of sunburns. non-medicated toiletries; perfume, perfume oils, cologne, eau de toilette, eau de perfume, eau de cologne and toilette water; toothpaste, deodorant and antiperspirant; cosmetic soaps, perfumed soaps, liquid soaps, hand, facial and bath soaps, deodorant soaps, shaving soaps, soap powder, toilet soaps, soaps for body care, and soaps for personal use; cosmetic pads, pre-moistened cosmetic wipes, pre-

moistened cosmetic tissues and towelettes; cotton sticks for cosmetic purposes; all purpose cotton swabs for personal use and cosmetic purposes; non-medicated topical skin creams, gels, toners, and lotions; topical skin sprays for cosmetic purposes; aromatherapy creams, lotions and oils; hair care products, namely, shampoos, conditioners, mousse, gels, frosts, creams, rinses, sprays, hair color, hair waving lotion, permanent wave preparations, hair lighteners, hair dyes, hair emollients, hair mascara, hair pomades, hair color removers, hair relaxing preparations, hair styling preparations, hair removing cream, and hair care preparations; astringents for cosmetic purposes; baby wipes; disposable wipes impregnated with chemicals or compounds for personal hygiene and household use; incense; room fragrances; fragrance emitting wicks for room fragrances; sachets; sachet-like eye pillows containing fragrances; scented ceramic stones; scented linen sprays and scented room sprays; scented oils used to produce aromas when heated; scented pine cones; potpourri; aromatherapy pillows comprising potpourri in fabric containers." This application was assigned Serial No. 85/640,747.

70.     On June 1, 2012, Applicant filed its application to register I AM OTHER in International Class 14 for "jewelry; jewelry findings; gemstone and precious stones; semi-precious stones; pearls; opals; platinum and its alloys; precious metals; charms, chokers, and pendants; lapel pins; ornamental lapel pins; pins being jewelry; body-piercing rings and studs; ear studs; ear clips; tie pins; tie clips; tie bars; tie tacks; tie fasteners; bolo ties with precious metal tips; cuff-links; shirt studs; badges of precious metal; costume jewelry; jewelry chains; jewelry pins for use on hats; hat ornaments of precious metal; holiday ornaments of precious metal; jewelry boxes and cases; key holders of precious metals; key chains of precious metal; watches; watch bracelets; watch accessories, namely, parts for watches; wristwatches; pocket watches; stop watches; watch straps and bands; watch chains and fobs; watch cases; watch boxes; clocks; alarm clocks; clocks incorporating radios; wall clocks; timepieces; boxes for timepieces; figurines, sculptures, busts, figures, statues, and statuettes, all of the foregoing of precious metal." This application was assigned Serial No. 85/640,758.

71.     On June 1, 2012, Applicant filed its application to register I AM OTHER in

International Class 18 for "all-purpose sports and athletic bags; beach, book, carry-on, duffel, gym, leather shopping, shoulder, tote and travel bags; fanny packs and waist packs; backpacks; knapsacks; purses; garment bags for travel; satchels; luggage; luggage tags; trunks; suitcases; cosmetic cases and bags sold empty; toiletry and vanity cases sold empty; tool bags sold empty; attaché cases; briefcases; briefcase-type portfolios; document cases; men's clutches; business cases; business card cases; calling and credit card cases; key cases; leather key chains; wallets; banknote holders; billfolds; umbrellas."  This application was assigned Serial No. 85/640,776.

72.    On June 1, 2012, Applicant filed its application to register I AM OTHER in International Class 25 for "clothing, namely, shirts, long-sleeved shirts, T-shirts, under shirts, night shirts, rugby shirts, polo shirts, cardigans, jerseys, scrubs not for medical purposes, smocks, pants, jeans, cargo pants, stretch pants, denim jeans, shorts, boxer shorts, tops, stretch tops, crop tops, tank tops, tankinis, sweat shirts, hooded sweat shirts, sweat jackets, sweat shorts, sweat pants, warm-up suits, track suits, sweaters, vests, fleece vests, pullovers, jackets, reversible jackets, wind-resistant jackets, shell jackets, sports jackets, jean jackets, coats, turtlenecks, swimwear, beachwear, tennis wear, layettes, infantwear, infants sleepers, booties, caps, hats, visors, headbands, wrist bands, sweat bands, headwear, ear muffs, aprons, scarves, bandanas, belts, neckwear, underwear, socks, loungewear, robes, underclothes, pajamas, sleepwear, hosiery, gloves, mittens, rain slickers, rainwear, footwear, sneakers, shoes, sandals, flip-flops, and slippers."  This application was assigned Serial No. 85/640,784.

73.    On June 1, 2012, Applicant filed its application to register I AM OTHER in International Class 35 for "on-line ordering services and on-line retail store services, electronic retailing services via computers, and retail store services available through computer communications, all of the aforesaid featuring recorded product, music related items, clothing and accessories therefor, printed promotional matter such as posters, books, audio books, and publications, and novelty items; management of musical artists; promoting the concerts of others; promotion of live and recorded musical performances via electronic, print, audio or visual media."  This application was assigned Serial No. 85/640,794.

74.     On June 1, 2012, Applicant filed its application to register I AM OTHER in International Class 9 for "musical sound recordings; audio-visual recordings, namely, compact discs, tape cassettes, audio cassettes, audio tapes, audio discs, records, CD-ROMs, video tapes, video cassettes, video discs, DVDs, DATs, MP3s, and laser discs, all featuring music; downloadable musical sound recordings; downloadable video recordings featuring music; downloadable electronic publications in the nature of books, booklets, magazines, journals, manuals, brochures, leaflets, pamphlets and newsletters, all in the field of music, entertainment, beauty, fashion, lifestyles, home décor, the arts, culture, politics and education; electronic publications, namely, books, booklets, magazines, journals, manuals, brochures, leaflets, pamphlets and newsletters, all in the field of music, entertainment, beauty, fashion, lifestyles, home décor, the arts, culture, politics and education, all recorded on CD-ROMs, diskettes, floppy disks, video cassettes, and magnetic tapes; protective eyewear; sunglasses; eyeglasses; eyeglass frames; opera glasses; spectacles; eyeglass, sunglass and spectacle cases; eyeglass, sunglass and spectacle straps; eyeglass, sunglass and spectacle chains; magnets; decorative magnets; refrigerator magnets; novelty magnets; mouse pads; compact disc cases; fitted cases for storage and transportation, namely, cases for compact discs, audio cassettes, video cassettes, CD-ROMs, home video games, home video game accessories, computers, computer accessories, cameras, camcorders and portable phones; computer carrying cases; wrist rests and supports for computer mouse users; wrist rests for computers; computer keyboard wrist pads; binoculars; magnifying glasses; signal and sport whistles; computer game software, programs, cartridges, joysticks, cassettes, discs and instruction manuals sold as a unit therewith; computerized video table games for gaming purposes; electronic game programs. interactive audio game discs containing role playing game and action games; interactive video game programs; interactive multimedia computer game program; joysticks for video games; machines for playing games of chance; video game interactive remote control units and control floor pads or mats; video game machines for use with televisions; video game output machines for use with televisions; virtual reality game software; downloadable music, ring tones, graphics, and electronic games via the Internet

-56-

and wireless devices; downloadable wireless game software; downloadable wireless entertainment, namely, ring tones, screen savers and images, and wallpaper." This application was assigned Serial No. 85/640,753.

75.     On June 1, 2012, Applicant filed its application to register I AM OTHER in International Class 16 for "posters; calendars; temporary tattoos; stickers; decals; bumper stickers; iron-on and plastic transfers; blank cards; greeting cards; motivational cards; occasion and note cards; place, record, score and trading cards; postcards; scrapbooks; stationery; paper; note pads; paper note tablets; writing tablets; note books; folders; bookmarks; paper pennants; binders; writing paper; envelopes; address and appointment books; autograph books; guest books; ledger books; log books; desk pads; paper tags; passport cases, covers and holders; desk top and personal organizers; organizers for stationery use; stationery-type portfolios; paper flags; mounts for stamps; rubber stamps; stamp albums; stamp pad inks; stamp pads; paper clips; book markers of precious metal; money clips; sleeves for holding and protecting stamps; paper banners; holders for desk accessories; coin holders; document holders; letter clips; letter openers, racks and trays; pens; pencils; extensions and attachments for pencils; glue and glue sticks for stationery and household use; glue for the office; markers; marker caddies; pen and pencil sets; crayons; highlighting pens and markers; erasers; drafting and drawing rulers; pencil sharpeners; bookends; book covers and holders; checkbook covers; checkbook holders; checkbook and passbook wallets; coin and photograph albums; brag books; leather book covers; bulletin boards; photographic, picture or art mounts; photographic prints; collages; photographs; lithographs; illustrations; decorative paper centerpieces and pencil-top ornaments; picture books; globes; paperweights; coasters made of paper; paper clip and sign holders; printed paper signs; clip boards; paper party favors; paper emblems; printed emblems; printed awards; paper identification tags; printed holograms; paper name badges; paper illustration boards. paper display boxes; paper flower pot covers; paper handkerchiefs; hat boxes of cardboard; hat boxes of paper; tour books; printed concert programs; event programs and albums; books, magazines, leaflets, journals, newsletters, booklets, pamphlets and brochures, all of the aforesaid featuring

music, entertainment, television, film, the arts, fashion, lifestyles, culture, and politics." This application was assigned Serial No. 85/640,768.

76.     On June 1, 2012, Applicant filed its application to register I AM OTHER in International Class 41 for "record production; music production; audio recording and production; videotape production; motion picture song production; production of video discs for others; recording studios; entertainment services, namely, producing musical audio and video programs; Distribution of radio and television programs featuring musical performances; and distribution of television programming featuring musical audio and video performances to broadcasters; music composition and transcription for others; song writing services; music publishing services; entertainment in the nature of live performances by a musical artist, musical group or musical band; entertainment in the nature of visual and audio performances by a musical artist, musical group and musical band; entertainment, namely, live music concerts; entertainment, namely, personal appearances by a musician, musical group or musical band; entertainment, namely, personal appearances by a television star, movie star, comedian or radio personality; entertainment services, namely, providing a web site featuring non-downloadable musical performances, musical videos, related film clips, photographs, and other multimedia materials in the field of non-downloadable musical performances; entertainment services, namely, providing prerecorded non-downloadable music, information in the field of music, commentary and articles about music, all online via a global computer network; production of television and radio programs; television show production; cable television show production; production of radio entertainment programs; motion picture film production; film editing; special effects animation services for film and video; entertainment in the nature of on-going television, cable television and radio programs featuring music, comedy, dramatic acts, spoken word, cartoons, animation and educational subject matters for children and young adults. television and cable television programs featuring music, drama, spoken word, comedy, cartoons, animation and educational subject matters for children and young adults; providing a variety show distributed over television, cable television, radio, satellite, audio and video media; entertainment, namely, a

continuing variety, news, comedy, dramatic and musical show broadcast over television, satellite, audio and video media; theatre productions; entertainment in the nature of live traveling tours by a professional entertainer, musical group or band featuring music, drama, spoken word and comedy; educational and entertainment services, namely, providing motivational and educational speakers; distribution of television programs and radio programs for others; television program syndication; radio programming on a global computer network; distribution of television programming to cable television systems; cable television programming; television and radio programming; television scheduling; entertainment services, namely, providing an on-line computer game; providing an online computer game that may be accessed network-wide by network users; multimedia entertainment software production services; providing information online relating to computer games and computer enhancements for games; entertainment services provided via computer, namely, providing online movie and music reviews; entertainment services, namely, presenting non-downloadable ringtones, pre-recorded music, video and graphics to mobile communications devices via a global computer network and wireless networks."  This application was assigned Serial No. 85/640,797.

77.     Defendants have rights to the will.i.am Family of Marks, including the I AM mark and the WILL.I.AM mark, that are prior to Plaintiff's alleged rights in the I AM OTHER mark.

78.     Plaintiff's proposed I AM OTHER mark is confusingly similar to the will.i.am Family of Marks.  Further, the goods and services to be offered by Plaintiff are similar and related to, those offered under the I AM mark for clothing and the WILL.I.AM mark for clothing, entertainment services and related products, or those offered or to be offered under the will.i.am Family of Marks.

79.     On information and belief, Plaintiff lacked a bona fide intent to use the mark I AM OTHER on all of the goods and services identified in the aforementioned applications when the applications were filed and continues to lack a bona fide intent to use the mark for all of the identified goods and services.  Indeed, while Plaintiff has filed expansive applications for a wide variety of goods and services including, but not limited to, Class 3 cosmetics and

perfumes, Class 9 musical sound recordings, DVDs, downloadable videos, software and sunglasses, Class 14 jewelry, Class 16 printed materials, Class 18 leather goods and bags, Class 25 clothing, Class 35 online retail store services, management of musical artists and the promotion of concerts and Class 41 entertainment services, record and music production and distribution, Plaintiff has only offered clothing and some apparel items in connection with his other business ventures (BILLIONAIRE BOYS CLUB and ICE CREAM) and has only used I AM OTHER for a YouTube channel, for an informational website, for some t-shirts offered for sale on the website, and for gift packages sent to subscribers of Plaintiff's website or Twitter page.

80.      The I AM mark and the WILL.I.AM mark and many of the other will.i.am Family of Marks are famous and distinctive within the meaning of the Federal Trademark Dilution Act. Plaintiff filed the aforementioned applications after the I AM mark and the WILL.I.AM mark and many of the other will.i.am Family of Marks became famous, and Plaintiff seeks to commercially use and/or continue to use the mark I AM OTHER.

81.      The registration of the I AM OTHER mark shown in the aforementioned applications is likely to dilute the I AM mark and the WILL.I.AM mark and the other will.i.am Family of Marks.

82.      As a result of all of the foregoing, the maturation of the aforementioned applications into registrations would cause a likelihood of confusion, mistake or deception with Defendants and the will.i.am Family of Marks, a likelihood of association, connection or affiliation with Defendants and/or Defendants' goods or services as to the origin, sponsorship or approval of Plaintiff's goods, services or commercial activities by Defendants, and a likelihood of dilution of the I AM mark and the WILL.I.AM mark and other will.i.am Family of Marks.

83.      Opposer would be damaged by the registration of the mark shown in the aforementioned applications, in that such registrations would give Plaintiff a prima facie exclusive right to the use of I AM OTHER, despite the likelihood of confusion, mistake or deception with Defendants and the will.i.am Family of Marks, the likelihood of association,

connection or affiliation with Defendants and/or Defendants' goods or services as to the origin,

sponsorship or approval of Plaintiff's goods, services or commercial activities by Defendants,

and likelihood of dilution of the I AM mark and the WILL.I.AM mark and other will.i.am

Family of Marks, and will allow Plaintiff to trade on Defendants' existing goodwill in the

will.i.am Family of Marks.

84.     As a result, Plaintiff's applications to register the I AM OTHER mark should not

mature to registration pursuant to 15 U.S.C. § 1051, *et seq*. and § 1119.

### FOURTH CAUSE OF ACTION

**(Statutory and Common Law Unfair Competition)**

85.     Defendants repeat and reallege each and every allegation of paragraphs 1 through

84, above, as though fully set forth herein.

86.     By reason of the foregoing activities of Plaintiff complained of herein, Plaintiff

has been, and is, engaged in acts of unfair competition in violation of the common law and the

statutory law of California[2] and under the common law of New York.  Plaintiff has engaged in

fraudulent, unfair, and unlawful business activities in violation of Cal. Bus. & Prof. Code

§ 17200.

87.     Plaintiff's acts complained of herein have damaged and will continue to damage

Defendants irreparably.  Defendants have no adequate remedy at law for these wrongs and

injuries.  The damage to Defendants includes harm to their trademarks, goodwill and reputation

in the marketplace that money cannot compensate.

88.     Defendants are therefore entitled to:  (a) injunctive relief restraining and enjoining

Plaintiff and its agents, servants, employees and attorneys, and all persons acting thereunder, in

concert with, or on its behalf, from using the I AM OTHER mark, any colorable imitation or

---

[2]     Shortly, Defendants intend to file a motion to transfer venue to the Central District of
California under 28 U.S.C. §1404.  If the motion to transfer venue is denied, Defendants will
seek leave to amend the Answer and Counterclaim to dismiss the California claims.  If the
motion to transfer venue is granted, Defendants will seek leave to amend from the California
court to dismiss the New York claims.

variation thereof, or any mark, name, symbol, or logo which is confusingly similar to the

will.i.am Family of Marks,  in connection with the marketing or sale of any goods, services or

commercial activities by Plaintiff; (b) Defendants' actual damages sustained as a result of

Plaintiff's wrongful acts; (c) an accounting of Plaintiff's profits from its sales of any infringing

products or services and any other products, services or commercial activities bearing or using

the I AM OTHER mark or any trademarks which are confusingly similar thereto; (d) the award

of Plaintiff's profits, as well as sums sufficient to compensate Defendants for all harm suffered

as a result of Plaintiff's wrongful conduct; and (e) punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray that this Court enter judgment against Plaintiff as

follows:

1.     Finding that Plaintiff has committed acts of unfair competition and violated 15

U.S.C. § 1125(a) and the common law, has infringed the will.i.am Family of Marks under the

common law and infringed the I AM and WILL.I.AM Mark trademarks under 15 U.S.C. § 1114,

has violated 15 U.S.C. § 1125(c)(1) and New York Gen. Bus. L. § 360-l, and has violated the

common law of New York and California and the statutory law of California by engaging in

unlawful, unfair and fraudulent business practices;

2.     Ordering that Plaintiff and its subsidiaries, officers, agents, servants, directors,

employees, servants, partners, representative, assigns, successors, related companies, attorneys

and all persons in active concert or participation with Plaintiff or with any of the foregoing be

enjoined preliminarily during the pendency of this action and permanently thereafter from:

a.     Manufacturing, transporting, promoting, importing, advertising,

publicizing, distributing, offering for sale or selling any goods or services or commercial

activities bearing the I AM OTHER mark or any other mark, name, symbol or logo, which is

likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that

any goods that Plaintiff caused to enter the stream of commerce are sponsored, licensed or

endorsed by Defendants, are authorized by Defendants, or are connected or affiliated in some way with Defendants or Defendants' goods or services or the will.i.am Family of Marks;

      b.    Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale or selling any goods or services bearing the I AM OTHER mark or any other mark, name, symbol or logo that is a copy or colorable imitation of, incorporates or is confusingly similar to the will.i.am Family of Marks;

      c.    Falsely implying Defendants' sponsorship, affiliation or connection of Plaintiff's goods, services or commercial activities with Defendants or engaging in any act or series of acts which, either alone or in combination, constitute unfair methods of competition with Defendants and from otherwise interfering with or injuring the will.i.am Family of Marks or the goodwill associated therewith;

      d.    Engaging in any act which is likely to dilute the distinctive quality of the will.i.am Family of Marks and/or injures Defendants' business reputation;

      e.    Representing or implying that Plaintiff is in any way sponsored by, affiliated with, or endorsed or licensed by Defendants; or

      f.    Knowingly assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (e) above;

3.    Ordering the PTO to refuse registration all of Plaintiff's applications to register I AM OTHER;

4.    Ordering that Defendants are the exclusive owners of the will.i.am Family of Marks and that such marks are valid and protectable;

5.    Granting an award of damages suffered by Defendants according to proof at the time of trial;

6.    Ordering that Plaintiff account to Defendants for any and all profits earned as a result of Plaintiff's acts in violation of Defendants' rights under the Lanham Act, New York Gen. Bus. L. § 360-l, and the common law of New York and of California;

7.     Ordering that Plaintiff account for all restitution for which Defendants are entitled under Cal. Bus. & Prof. Code § 17200.

8.     Granting an award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

9.     Granting an award of punitive damages for the willful and wanton nature of Plaintiff's aforesaid acts;

10.     For pre-judgment interest on any recovery by Defendants;

11.     Granting an award of Defendants' costs, expenses and attorney's fees; and

12.     Granting such other and further relief as is just and proper.

Respectfully submitted,

Dated:  September 16, 2013               By:/s/ Theodore C. Max
_____
                                         Theodore C. Max (TM 1742)
                                         SHEPPARD MULLIN RICHTER & HAMPTON, LLP
                                         30 Rockefeller Plaza, 39th Floor
                                         New York, New York 10112
                                         Tel.:  (212) 653-8700
                                         Fax:  (212) 653-8701
                                         tmax@sheppardmullin.com

                                         Attorneys for Defendants and Counterclaimants
                                         *William Adams and i.am.symbollic llc*

Co-Counsel:

Jill M. Pietrini (*pro hac vice application to be filed*)
Whitney Walters (*pro hac vice application filed*)
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone:  (310) 228-3700
Facsimile:  (310) 228-3701
jpietrini@sheppardmullin.com
wwalters@sheppardmullin.com

## **DEMAND FOR JURY TRIAL**

Defendants request a trial by jury on all issues so triable in this action.


Respectfully submitted,


Dated:  September 16, 2013            By:/s/ Theodore C. Max _____
                                          Theodore C. Max (TM 1742)
                                          SHEPPARD MULLIN RICHTER & HAMPTON, LLP
                                          30 Rockefeller Plaza, 39th Floor
                                          New York, New York 10112
                                          Tel.:  (212) 653-8700
                                          Fax:  (212) 653-8701
                                          tmax@sheppardmullin.com

                                          Attorneys for Defendants and Counterclaimants
                                          *William Adams and i.am.symbollic llc*


Co-Counsel:

Jill M. Pietrini (*pro hac vice application to be filed*)
Whitney Walters (*pro hac vice application filed*)
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone:  (310) 228-3700
Facsimile:  (310) 228-3701
jpietrini@sheppardmullin.com
wwalters@sheppardmullin.com

SMRH:409597035.3